## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **WSOU INVESTMENTS, LLC D/B/A** | § | **CIVIL ACTION 6:20-cv-00456-ADA** |
| **BRAZOS LICENSING AND** | § | **CIVIL ACTION 6:20-cv-00458-ADA** |
| **DEVELOPMENT,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **MICROSOFT CORPORATION,** | § | |
| *Defendant.* | § | |
| | § | |

**PLAINTIFFS' OPENING CLAIM CONSTRUCTION BRIEF**

## TABLE OF CONTENTS

II.   Legal Standards ................................................................................................1

    A.   Claim Construction Generally ...............................................................1

    B.   Means-Plus-Function Claim Construction Analysis ................................2

    C.   Indefiniteness .......................................................................................2

III.   Terms of U.S. Patent No. 7,388,868 (Case No. 6:20-cv-00458-ADA) ..............3

    A.   Agreed Terms of the '868 Patent ...........................................................3

        1.   "emergency call muter" .............................................................3

        2.   "[origination / originating] station" ............................................3

    B.   Disputed Terms of the '868 Patent .........................................................4

        3.   "an emergency call router" .........................................................4

        4.   "access gateway" ......................................................................5

        5.   "target gateway" .......................................................................7

        6.   "selectably operable" and "selectably routing" ...........................9

        7.   "… determining whether the call of the selected call-type shall be completable by way of the normal-operation communication link and for rerouting a call request to the local-network alternate station upon determination that the call completion by way of the normal-operation communication link" ..............................................................10

IV.   U.S. Patent No. 7,676,550 ( Case No. 6:20-cv-00456)  Disputed Claim Terms ..............11

    A.   Terms with the word "means" ...............................................................11

        8.   means for defining access rules for each of said presence contributors, said access rules associated with each of said presence contributors defining respective rights and privileges of said presence contributors to access said presence information of said presentity after said presence contributors have provided said presence information to said presence server ................................................................................................13

        9.   means for authenticating one of said presence contributors to determine said access rules associated with said one of said presence contributors ..15

10. means for enabling access to said presence information of said presentity by said one of said presence contributors based on said access rules associated with said one of said presence contributors..............................16

11. means for enabling access further includes means for filtering said presence information of said presentity based on said access rules of said one of said presence contributors to produce filtered presence information and means for providing said filtered presence information to said one of said presence contributors........................................................................18

12. means for enabling access further includes means for enabling said one of said presence contributors to update said presence information of said presentity based on said access rules of said one of said presence contributors ...............................................................................................21

13. means for enabling access further includes means for enabling said one of said presence contributors to define preference information associated with said presence information of said presentity based on said access rules of said one of said presence contributors ...........................................23

14. means for authenticating further includes means for assigning authentication credentials to each of said presence contributors and means for receiving said authentication credentials of said one of said presence contributors to authenticate said one of said presence contributors ...............................................................................................25

15. means for enabling further includes means for enabling access to said presence information of said presentity by multiple ones of said presence contributors simultaneously based on said respective access rules associated with said multiple ones of said presence contributors.............29

16. means for enabling further includes means for providing hierarchical access by said presence contributors to said presence information of said presentity...................................................................................................31

B.  Other disputed terms (without the word "means") ................................................33

17. presentity / presentities ...........................................................................33

18. presence contributors ..............................................................................34

# TABLE OF AUTHORITIES

**Cases**

*Acromed Corp. v. Sofamor Danek Group*,
253 F.3d 1371 (Fed. Cir. 2001)................................................................................. passim

*Azure Networks, LLC v. CSR PLC*,
771 F.3d 1336 (Fed. Cir. 2014)....................................................................................... 1

*CloudofChange, LLC v. NCR Corp.*,
No. 6-19-CV-00513-ADA, 2020 WL 4004810 (W.D. Tex. July 15, 2020)......................... 1, 2

*Comark Commc'ns, Inc. v. Harris Corp.*,
156 F.3d 1182 (Fed. Cir. 1998)....................................................................................... 1

*Dayco Prods., Inc. v. Total Containment, Inc.*,
258 F.3d 1317 (Fed. Cir. 2001)................................................................................... 6, 7, 8

*Digital Retail Apps, Inc.* v. *HE-B, LP*,
Case No. 6:19-cv-00167-ADA, 2020 WL 376664 (W.D. Tex. Jan. 23, 2020) ......................... 2

*e-LYNXX Corp. v. Innerworkings, Inc.*,
No. 1:10-CV-2535, 2012 WL 4484921 (M.D. Pa. Sept. 27, 2012)........................................ 29

*Finjan, Inc. v. Sophos, Inc.*,
No. 14-CV-01197-WHO, 2015 WL 890621 (N.D. Cal. Mar. 2, 2015)................................... 28

*Freeny v. Murphy USA Inc.*,
No. 2:13-CV-791-RSP, 2015 WL 294102 (E.D. Tex. Jan. 21, 2015) ................................... 28

*In re Katz Interactive Call Processing Patent Litig.*,
639 F.3d 1303 (Fed. Cir. 2011)................................................................................... 25, 28

*Intelligent Automation Design, LLC v. Zimmer Biomet CMF & Thoracic, LLC*,
2019-1100 (Fed. Cir. Jan. 30, 2020) ............................................................................ 12, 15

*JVW Enterprises, Inc. v. Interact Accessories, Inc.*,
424 F.3d 1324 (Fed. Cir. 2005)................................................................................... 13, 26

*K-2 Corp. v. Salomon S.A.*,
191 F.3d 1356 (Fed. Cir. 1999)................................................................................... 6, 7, 8

*Micro Chem., Inc. v. Great Plains Chem. Co.*,
194 F.3d 1250 (Fed. Cir. 1999)................................................................................. passim

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898 (2014) ................................................................................... 2, 11

*Nevro Corp. v. Boston Scientific Corporation*,
    955 F.3d 35 (Fed. Cir. 2020) ............................................................... passim

*Phillips* v. *AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ................................................................. 1, 6

*Power Mosfet Techs., L.L.C. v. Siemens AG*,
    378 F.3d 1396 (Fed. Cir. 2004) ..................................................................... 8

*Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*,
    844 F.3d 1370 (Fed. Cir. 2017) ..................................................................... 2

*SRI Intern. v. Matsushita Elec. Corp. of America*,
    775 F.2d 1107 (Fed. Cir. 1985) ..................................................................... 8

*TecSec, Inc. v. Int'l Bus. Machs. Corp.*,
    731 F.3d 1336 (Fed. Cir. 2013) ................................................................... 11

*TriMed, Inc. v. Stryker Corp.*,
    514 F.3d 1256 (Fed. Cir. 2008) ................................................................... 11

*VW Enterprises, Inc. v. Interact Accessories, Inc.*,
    424 F.3d 1324 (Fed. Cir. 2005) ................................................................... 19

**Statutes**

35 U.S.C. § 112 ..................................................................................................... 2

Plaintiff WSOU Investments, LLC d/b/a Brazos License and Development ("WSOU") respectfully submits this claim construction brief in support of its proposed constructions.

## II.    Legal Standards

### A.    Claim Construction Generally

The general rule is that claim terms are generally given their plain-and-ordinary meaning. *Phillips* v. *AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005) *(en banc); Azure Networks, LLC v. CSR PLC,* 771 F.3d 1336, 1347 (Fed. Cir. 2014), *vacated on other grounds by* 135 S. Ct. 1846, 1846 (2015) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time."). The plain and ordinary meaning of a term is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Philips,* 415 F.3d at 1313. "'Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant* v. *Advanced Micro-Devices, Inc.,* 848 F.2d 1560, 1571 (Fed. Cir. 1988)). Although extrinsic evidence can also be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips,* 415 F.3d at 1317 (quoting *C.R. Bard, Inc.* v. *U.S. Surgical Corp.,* 388 F.3d 858, 862 (Fed. Cir. 2004)).

This Court recently explained that "[t]he 'only two exceptions to [the] general rule' that claim terms are construed according to their plain and ordinary meaning are when the patentee (1) acts as his/her own lexicographer or (2) disavows the full scope of the claim term either in the specification or during prosecution." *CloudofChange, LLC v. NCR Corp.*, No. 6-19-CV-00513-ADA, 2020 WL 4004810, at *2 (W.D. Tex. July 15, 2020) (quoting *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). "To act as his/her own lexicographer, the

patentee must 'clearly set forth a definition of the disputed claim term,' and 'clearly express an intent to define the term.'" *Id.* (quoting *Thorner,* 669 F.3d at 1365). And "[t]o disavow the full scope of a claim term, the patentee's statements in the specification or prosecution history must represent 'a clear disavowal of claim scope.'" *Id.* (quoting *Thorner,* 669 F.3d at at 1366). "Accordingly, when 'an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable.'" *Id.* (quoting *3MInnovative Props. Co.* v. *Tredegar Corp.,* 725 F.3d 1315, 1326 (Fed. Cir. 2013)).

### B. Means-Plus-Function Claim Construction Analysis

A rebuttable presumption that § 112 ¶ 6 applies when the claim language includes "means" in its terms and does not apply in the absence of that term. *Digital Retail Apps, Inc.* v. *HE-B, LP,* Case No. 6:19-cv-00167-ADA, 2020 WL 376664, at *2 (W.D. Tex. Jan. 23, 2020) (citing 35 U.S.C. § 112 H 6; *Williamson* v. *Citrix Online, LLC,* 792 F.3d 1339, 1347-49 (Fed. Cir. 2015) (*en banc*)). "The presumption stands or falls according to whether one of ordinary skill in the art would understand the claim with the functional language, in the context of the entire specification, to denote sufficiently definite structure or acts for performing the function." *Id.* at *2.

### C. Indefiniteness

The Patent Act requires claims to particularly point out and distinctly claim the subject matter regarded as the inventions. 35 U.S.C. § 112, ¶ 2. To satisfy this requirement, the claim must be read in light of the intrinsic evidence to determine whether it informs one of skill in the art at the time of the invention "about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910-11 (2014). To establish that a claim is indefinite, a patent challenger must prove indefiniteness by clear and convincing evidence. *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017).

### III.    Terms of U.S. Patent No. 7,388,868 (Case No. 6:20-cv-00458-ADA)

#### A.    Agreed Terms of the '868 Patent

##### 1.    "emergency call muter"

The parties agree that the term "emergency call *muter*" (recited only in dependent claim 12) should be construed here as "emergency call *router*" to correct a clerical error.  This error appears to have been introduced by a failure to properly convert a document to text form, as a document submitted during prosecution reveals that the term as originally filed recited "emergency call *router*" (as emphasized by the red annotation to the screenshot below).

12 (Currently Amended).    The apparatus of claim 1 wherein the communication system further comprises a local-network alternate station, wherein said emergency call router is further for determining whether the call of the selected call-type shall be completable by way of the normal-operation communication link and for rerouting [the] a call request to the local-network alternate station upon determination that the call completion by way of the normal-operation communication link.

Application Serial No. 10/321,230 (which issued as the '868 patent), Remarks dated Nov. 2, 2007 to a Non-Final Office Action dated Dec. 11, 2006 (red annotation highlighting added).

##### 2.    "[origination / originating] station"

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "the origination station" (recited in independent claims 1 and 18) makes antecedent reference to the term "an originating station" introduced in the preamble | Plain and ordinary meaning |

While it is Microsoft's position that the terms "[origination / originating] station" require no construction, and in principle WSOU generally agrees, out of an abundance of caution, WSOU submits this term only for the Court to take judicial notice that the term "the origination station" (recited in independent claims 1 and 18) makes antecedent reference to the term "an originating

3

station" introduced in respective claim preambles.  This should be considered the plain and ordinary meaning, which is what Microsoft proposes.

### B.    Disputed Terms of the '868 Patent

### 3.    "an emergency call router"

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | back-up call router that is operable only when the communication link fails |

The term "emergency call router" (recited in independent claims 1 and 18) requires no construction because "router" is a term of art and the couplet "emergency call" qualifies the "router" term using commonplace words.

Microsoft errs in using claim construction as a pretense to add limitations that depart from what is recited.  Specifically, Microsoft seeks to construe "emergency call router" to mean "back-up call router that is operable only when the communication link fails."   Contrary to what Microsoft suggests by its erroneous construction, none of the claims of the '868 patent restricts the "emergency call router" in terms of being *only operable* when the communication link fails. Rather, the surrounding claim language defines the "emergency call router" term, in part, by reciting what it must be "operable" to do (claim 1),[1] or by reciting steps involving its operation (claim 18),[2] without excluding the possibility that the claimed "emergency call router" may also

---

[1] Independent claim 1 recites, for example, "said emergency call router selectably operable responsive to failure of the normal-operation communication link for routing the call of the first selected call-type, thereby to facilitate call completion of the first selected call-type originated by the origination station." ('868 patent, claim 1, 10:18-23, emphasis added.)

[2] Independent claim 18 is a method claim reciting a process involving the "emergency call router" in at least the following steps: (1) "selectably routing a call request of the selected call-type *by way of an emergency call router*, thereby to facilitate call-completion of the selected call-type between the origination station and the terminating station"; and (2) "connecting *the*

have unrecited operability.  It would be improper to narrowly redefine the "emergency call router" in terms of "operable *only*" language that departs from what is recited.

Microsoft's impermissible redraft also cannot withstand scrutiny in view of claim language recited in dependent claims.  Dependent claim 7, for example, recites "said emergency call router further comprises a call priority determiner operable *at least* responsive to failure of the normal-operation communication link …." ('868 patent, claim 7, 10:56-60, emphasis added.)  Here, the recitation "… operable *at least* responsive to failure of the normal-operation communication link" refutes Microsoft's interpretation that the "emergency call router" is necessarily *only operable when the communication link fails*.

### 4. "access gateway"

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | gateway coupled to the packet data network for communication with a softswitch |

The words "access" and "gateway" (as recited in independent claims 1 and 18) require no construction.  The term "gateway" in the recited context is a term of art and the "access" qualifier is readily understood in light of the surrounding claim language and the corresponding written description.  Furthermore, the claims repeatedly recite an "access gateway" element in contexts expressly interrelating this element with others—*e.g.*, "an emergency call router at least coupled to the access gateway" (claim 1); "communication network further is coupled to at least a first access gateway and wherein said emergency call router is embodied at the first access gateway" (claim 2); "a local-network alternate station coupled to an access gateway" (claim 10); etc.  Under these circumstances, there is no need to redraft the word choice of the patentee.

---

*emergency call router* …." ('868 patent, claim 1, 12:26-31, emphasis added.)

Microsoft errs in interpreting "access gateway" to mean "gateway coupled to the packet data network for communication with a softswitch."   While Microsoft uses "gateway" in its construction, it is unclear what portion of the remainder of its construction, if any, purportedly *defines* the "access" qualifier.  It would appear Microsoft, instead, has abandoned the "access" qualifier altogether in favor of impermissibly addition extraneous limitations of its choosing.

The claim language itself refutes Microsoft's impermissibly rewrite.  For example, dependent claims 2, 3, 4, 6, and 7 each recite an "access gateway" term in the context of "the communication network . . . coupled to at least a first access gateway".  This repeated claim language confirms that the claims makes such a coupling explicit when it is required.  The doctrine of claim differentiation proscribes incorporating into an independent claim a limitation (such as a required coupling between elements) that is introduced in a dependent claim, as Microsoft erroneously proposes here.  *Phillips,* 415 F.3d at 1315 ("The presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim.") (citation omitted).

Microsoft also errs in attempting to add the requirement that the recited "communication network" must be a "packet data network."  *See Dayco Prods., Inc. v. Total Containment, Inc.*, 258 F.3d 1317, 1327 (Fed. Cir. 2001) (proscribing adding limitations neither required by claim terms nor unambiguously required by either the specification or the prosecution history of a patent); *see also K-2 Corp. v. Salomon S.A.,* 191 F.3d 1356, 1362-63 (Fed. Cir. 1999).  The word "packet" does not appear in the claims; and none of the claims restrict the "communication network" to only a "packet data network."  Indeed, Microsoft's construction unnecessarily injects ambiguity by its attempt to introduce the requirement "*the* packet data network" when there is no antecedent basis for a *network* expressly defined as being exclusively being *packet based*.

6

Microsoft compounds its error by newly seeking to add a "softswitch" element, which is not recited in any of the claims of the '868 patent. *Id*. Even worse, Microsoft attempts to add this unrecited element in the context of "gateway coupled to the packet data network *for communication with a softswitch*". It is unclear as to whether the clause "for communication with a softwswitch" is intended to modify the "gateway" portion of Microsoft's construction or, instead, the "packet data network" portion (or both). However, the Court need not resolve such ambiguity (appearing only in Microsoft's construction) because it concerns *additional* limitations that are neither required by claim terms nor unambiguously required by either the specification or the prosecution history. *See Dayco*, 258 F.3d at 1327; *K-2 Corp.*, 191 F.3d at 1362-63.

   5.    "target gateway"

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | gateway coupled to the emergency call router and separate from the access gateway |

The words "target" and "gateway" (as recited in independent claims and 18) require no construction given the context in which they are recited. The term "gateway" in this context is a term of art and the "target" qualifier is readily understood in light of the surrounding claim language and the corresponding written description.

Microsoft errs in seeking to construe every instance of "target gateway" to require a "gateway coupled to the emergency call router and separate from the access gateway." While Microsoft uses "gateway" in its construction, it is unclear what portion of the remainder of its construction, if any, purportedly *defines* the "target" qualifier. It would appear Microsoft, instead, has abandoned the "target" qualifier altogether in favor of its own claim redrafting. In its impermissible redraft, Microsoft does not seek to construe "target gateway" in terms of what *it is*, but rather only in terms of extraneous limitations involving other elements.

7

Because claim 1 recites "a target gateway coupled to the emergency call router", Microsoft's construction for "target gateway" should be rejected as rendering certain claim language superfluous. *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1410 (Fed. Cir. 2004) ("interpretations that render some portion of the claim language superfluous are disfavored."). It is also significant that independent claim 18 does not include the same explicit requirement of "a target gateway coupled to the emergency call router[.]" Rather, claim 18 introduces the target gateway term in the following distinct context: "connecting the emergency call router, as a preliminary operation, between at least a first access gateway and a target gateway of the communication system[.]" It would be improper to import—*literally verbatim*—a limitation from claim 1 into claim 18. *SRI Intern. v. Matsushita Elec. Corp. of America*, 775 F.2d 1107, 1122 (Fed. Cir. 1985) (*en banc*) ("It is settled law that when a patent claim does not contain a certain limitation and another claim does, that limitation cannot be read into the former claim in determining either validity or infringement.").

Microsoft compounds its error by proposing to add the new limitation that the "target gateway" must be "… separate from the access gateway." Microsoft's extraneous "separate from" requirement should be rejected is neither required by claim terms nor unambiguously required by either the specification or the prosecution history. *See Dayco*, 258 F.3d at 1327; *K-2 Corp.*, 191 F.3d at 1362-63. Moreover, certain dependent claims confirm that there is not necessarily physical separation between elements introduced in claim 1.[3] For example, claim 2 recites, "said emergency call router is embodied at the first access gateway" (10:30-33); and claim 3 recites "said detector is embodied at the access gateway" (10:34-37).

---

[3] Unlike claim 1, independent claim 18 has no claims dependent therefrom.

### 6.   "selectably operable" and "selectably routing"

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | deciding whether to permit a call to be routed based on call-type or call priority |

The couplets "selectably operable" and "selectable routing" (as recited in independent claims 1 and 18, respectively) require no construction here.  Microsoft errs in proposing the same construction for every instance in which either "selectably operable" or "selectably routing" is recited, notwithstanding the distinct word choice (i.e., "operable" vs. "routing") and the differing surrounding contexts.  According to Microsoft, regardless of the distinct word choice and contexts, any recitation of either "selectably operable" or "selectably routing" must require "deciding whether to permit a call to be routed based on call-type or call priority."  To be clear, Microsoft does not attempt to define the words "selectably," or "operable," or "routing."  Rather, Microsoft impermissibly seeks to rewrite the claim language appearing after those terms are recited.  However, claim construction is not an exercise at redrafting claim language to suit a party's preference.

There is no need to interpret "selectably operable" in terms of a contrived and untethered "deciding …" as Microsoft proposes.  This is at least because claim 1 already makes explicit (1) what "selectively operable" pertains to and (2) what "said emergency call router *determines* … prior to said operation of routing[.]"  Specifically, claim 1 recites the term "selectably operable" in the following context: "said emergency call router *selectably operable* responsive to failure of the normal-operation communication link for routing the call of the first selected call-type, thereby to facilitate call completion of the first selected call-type originated by the origination station[.]"  Claim 1 further recites, "said emergency call router determines whether the call request is for a call of the first selected call-type prior to said operation of routing the call of the first selected call-

9

type."  Microsoft may prefer its redrafting of claim language, presumably to advance a non-infringement or invalidity position, but that is not the purpose of claim construction.

For analogous reasons, Microsoft's construction cannot withstand scrutiny in view of claim 18.  Claim 18 recites "selectively routing" in the following context: "said emergency call router is further selectably operable responsive to failure of the normal-operation communication link for routing a call request to the local-network station."  Claim 18 further recites, "determining whether the call request is for a call of the selected call-type prior to said operation of selectably routing."  Here again, there is no need to interpret "selectably routing" in terms of a contrived and untethered "deciding …." where claim 18 already makes explicit (1) what "selectively routing" pertains to and (2) what must be determined "prior to said operation of selectably routing."

> 7. **"… determining whether the call of the selected call-type shall be completable by way of the normal-operation communication link and for rerouting a call request to the local-network alternate station upon determination that the call completion by way of the normal-operation communication link"**

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning; not indefinite. | Indefinite |

Microsoft purports in its Invalidity Contentions to challenge the definiteness of dependent claim 12 on the basis that it "appears to be missing words."  Microsoft's Invalidity Contentions dated Nov. 6, 2020 ("458-MIC"), at 30-31.  Specifically, Microsoft alleges that claim 12 is "incomplete as [t]o the underlined portion" as follows: "[t]he apparatus of claim 1 wherein the communication system further comprises a local-network alternate station, wherein said emergency call muter [router] is further for determining whether the call of the selected call-type shall be completable by way of the normal-operation communication link and for rerouting a call request to the local-network alternate station upon determination that the call completion by way of the normal-operation communication link[.]"  *Id.* (underlining original).

The claim langue in question "inform[s] those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910, 134 S. Ct. 2120, 2129 (2014).  A person of ordinary skill in the art would recognize what is meant by "call completion" as that phrase is repeatedly used throughout the '888 patent.  A plain reading of claim 12 reveals (in pertinent part) that determination of a "call completion" event is a condition upon which "a call request to the local-network alternate station" is rerouted by way of the normal-operation communication link.  This plain reading of the claim language would remain unchanged if, for example, the word "that" had been replaced with the word "of" in the recitation "… upon determination [of] the call completion by way of the normal-operation communication link[.]"  No words are missing from claim 12.  The words that are recited need only be properly understood. Microsoft failed to disclose in its Invalidity Contentions clear and convincing evidence sufficient to rebut the presumption of definiteness of claim 12.

## IV.     U.S. Patent No. 7,676,550 ( Case No. 6:20-cv-00456)  Disputed Claim Terms

### A.     Terms with the word "means"

For each of the disputed terms including the word "means", the parties dispute whether the rebuttable presumption that § 112 ¶ 6 applies has been overcome. For each "means" term identified by Defendant, the corresponding structure is recited in the preamble of claim 1 itself, and thus the rebuttable presumption is overcome, specifically *the recited structure within the claims themselves* is: **multiple access presence agent with presence server**. '550 patent, 8:30-31. *TriMed, Inc. v. Stryker Corp.*, 514 F.3d 1256, (Fed. Cir. 2008) ("Sufficient structure exists when the claim language specifies the exact structure that performs the functions in question without need to resort to other portions of the specification or extrinsic evidence for an adequate understanding of the structure."); *TecSec, Inc. v. Int'l Bus. Machs. Corp.*, 731 F.3d 1336, 1347 (Fed. Cir. 2013) (To

determine whether a claim recites sufficient structure, "it is sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures and even if the term identifies the structures by their function."). And in fact, while almost all of Defendant's proposed structures for these terms improperly seeks to include more structure than required, in each case Defendant also identifies a [multiple access] presence agent and presence server, *which is recited in the claim language itself.*

Regardless, even if these claim terms are subject to 112 ¶ 6, Defendant's proposed constructions should be rejected at least because: (i) Defendant misidentifies the alleged means-plus-function term; (ii) Defendant misidentifies the recited function; and (iii) Defendant improperly seeks to include more structure than is required. Finally, Defendant also proposes each of its proposed terms are indefinite for failure to disclose an algorithm. Defendant is wrong for at least two reasons. First, Defendant is wrong because neither the claims or Defendant's own (improper) proposed structures recite a general-purpose computer or processor. *See Nevro Corp. v. Boston Scientific Corporation,* 955 F.3d 35, 42-43 (Fed. Cir. 2020) (no requirement for a specific algorithm when the identified structure is not a general-purpose computer or processor). And second, while WSOU disagrees that disclosure of an algorithm is required, to the extent disclosure of any algorithms are necessary, the claims are not indefinite because the specification and claims disclose such algorithms. And to the extent Defendant will contend that the algorithm must conform to some specific format, Defendant is wrong – the Federal Circuit instructs that the algorithm can be expressed "in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure." *Intelligent Automation Design, LLC v. Zimmer Biomet CMF & Thoracic, LLC,* 2019-1100, at *7 (Fed. Cir. Jan. 30, 2020) *quoting Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1312 (Fed. Cir. 2012).

8.      **means for defining access rules for each of said presence contributors, said access rules associated with each of said presence contributors defining respective rights and privileges of said presence contributors to access said presence information of said presentity after said presence contributors have provided said presence information to said presence server**

| WSOU's Proposed Construction | Defendant's Proposed Construction |
| --- | --- |
| Plain and ordinary meaning, not subject to 35 U.S.C. § 112 ¶ 6.<br><br>But if the Court deems this term is subject to 35 U.S.C. § 112 ¶ 6:<br>**Function**: defining access rules for each of said presence contributors<br><br>**Structure**: multiple access presence agent with presence server, and equivalents thereof<br><br>Furthermore, if the Court deems disclosure of an algorithm is required:<br><br>**Algorithm**: define respective rights and privileges of presence contributors to access the presence information of a presentity | **Function**: defining access rules for each of said presence contributors, said access rules associated with each of said presence contributors defining respective rights and privileges of said presence contributors to access said presence information of said presentity after said presence contributors have provided said presence information to said presence server.<br><br>**Structure**: presentity 110 along with presence server 160 and presence agent 150<br><br>**Algorithm**: Not Disclosed<br><br>Term is Indefinite |

As an initial matter, this term is not subject to 35 U.S.C. § 112 ¶ 6 for the reasons discussed above in Section III.A. Regardless, Defendant misidentifies the alleged means-plus-function term by over-including claim language. If this term were subject to 35 U.S.C. § 112 ¶ 6 (and it is not), **the correct recitation of the term would be**: "means for defining access rules for each of said presence contributors". And Defendant further compounds its error by misidentifying the recited function to similarly over-include claim language that does not recite function. The Federal Circuit has emphasized that in performing the first step, "a court may not construe a means-plus-function limitation 'by adopting a function different from that explicitly recited in the claim.'" *JVW Enterprises, Inc. v. Interact Accessories, Inc*., 424 F.3d 1324, 1331 (Fed. Cir. 2005), *quoting Micro Chem., Inc. v. Great Plains Chem. Co*., 194 F.3d 1250, 1258 (Fed. Cir. 1999). That is because

"[a]n error in identification of the function can improperly alter the identification of structure in the specification corresponding to that function." *Id*. at 1258. If this term were subject to 35 U.S.C. § 112 ¶ 6 (and it is not), **the correct recitation of function would be**: "<u>defining access rules for each of said presence contributors</u>". Defendant's proposed construction should further be rejected because it recites structure that is unnecessary to perform the recited function. As discussed in Section III.A, above, **the correct corresponding structure is**: "<u>multiple access presence agent with presence server, and equivalents thereof</u>". That is all that is required. *See* '550 patent, 1:60-63, 5:62-6:1, 6:65-7:3, 7:38-41, 7:65-8:5, 8:36-39, Figs. 3, 4. Defendant's proposal to include "presentity 110" is unnecessary to perform the function of "defining access rules for each of said presence contributors". *See Acromed Corp. v. Sofamor Danek Group*, 253 F.3d 1371, 1382 (Fed. Cir. 2001) ("a court may not import into the claim structural limitations from the written description that are unnecessary to perform the claimed function."); *Micro Chem. Inc*., 194 F.3d at 1258 ("The statute does not permit limitation of a means-plus-function claim by adopting a function different from that explicitly recited in the claim. Nor does the statute permit incorporation of structure from the written description beyond that necessary to perform the claimed function."). For example, the specification describes that "each multiple access presence agent 150a and 150b is capable of defining access rules 210 for each of the presence contributors 120." '550 patent, 5:50-52. Nothing more is required.

Finally, Defendant also proposes the term is indefinite for failure to disclose an algorithm. Defendant is wrong for at least two reasons. First, Defendant is wrong because neither the claims or Defendant's own (improper) proposed structure recite a general-purpose computer or processor. *See Nevro Corp.,* 955 F.3d at 42-43  (no requirement for a specific algorithm when the identified structure is not a general-purpose computer or processor). Second, to the extent disclosure of the

algorithm is deemed to be necessary, the specification, as well as the claim itself, discloses **the corresponding algorithm**: "define respective rights and privileges of presence contributors to access the presence information of a presentity." *See* '550 patent, 1:60-63, 5:62-6:1, 6:65-7:3, 7:38-41, 7:65-8:5, 8:36-39, Figs. 3, 4. And to the extent Defendant will contend that the algorithm must conform to some specific format, Defendant is wrong – the Federal Circuit instructs that the algorithm can be expressed "in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure." *Intelligent Automation Design, LLC v. Zimmer Biomet CMF & Thoracic, LLC*, 2019-1100, at *7 (Fed. Cir. Jan. 30, 2020) *quoting Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1312 (Fed. Cir. 2012).

> 9.   **means for authenticating one of said presence contributors to determine said access rules associated with said one of said presence contributors**

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning, not subject to 35 U.S.C. § 112 ¶ 6.<br><br>But if the Court deems this term is subject to 35 U.S.C. § 112 ¶ 6:<br>**Function**: authenticating one of said presence contributors to determine said access rules associated with said one of said presence contributors<br><br>**Structure**: multiple access presence agent with presence server, and equivalents thereof<br><br>Furthermore, if the Court deems disclosure of an algorithm is required:<br><br>**Algorithm**: determine if said presence contributor is authenticated based on provided authentication credentials | **Function**: authenticating one of said presence contributors to determine said access rules associated with said one of said presence contributors<br><br>**Structure**: presence server 160 and presence agent 150<br><br>**Algorithm**: Not Disclosed<br><br>Term is Indefinite |

As an initial matter, this term is not subject to 35 U.S.C. § 112 ¶ 6 for the reasons discussed above in Section III.A. Regardless, here, the parties agree on the recited function and mostly agree

on the recited structure. The only disagreement (in addition to whether the term is subject to 35 U.S.C. § 112 ¶ 6 at all), appears to be whether disclosure of an algorithm is required. It is not. In any case, Defendant's contention that the term is indefinite is wrong. First, Defendant is wrong because neither the claims or Defendant's own proposed structure recite a general-purpose computer or processor. *See Nevro Corp.,* 955 F.3d at 42-43. Second, to the extent disclosure of the algorithm is deemed to be necessary, the specification discloses **the corresponding algorithm**: "determine if said presence contributor is authenticated based on provided authentication credentials". *See* '550 patent, 1:32-34, 2:21-26, 6:44-53, 7:4-12, 7:42-47, 8:5-22, Fig. 5.

> 10. **means for enabling access to said presence information of said presentity by said one of said presence contributors based on said access rules associated with said one of said presence contributors**

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning, not subject to 35 U.S.C. § 112 ¶ 6.<br><br>But if the Court deems this term is subject to 35 U.S.C. § 112 ¶ 6:<br>**Function**: enabling access to said presence information of said presentity by said one of said presence contributors based on said access rules associated with said one of said presence contributors<br><br>**Structure**: multiple access presence agent with presence server, and equivalents thereof<br><br>Furthermore, if the Court deems disclosure of an algorithm is required:<br><br>**Algorithm**: determine access rules for said one of said presence contributors and granting said one of said presence contributors the rights and privileges associated with said access rules | **Function**: enabling access to said presence information of said presentity by said one of said presence contributors based on said access rules associated with said one of said presence contributors<br><br>**Structure**: presence server 160, presence agent 150, presence user agent 140, and communications network 130<br><br>**Algorithm**: Not Disclosed<br><br>Term is Indefinite |

As an initial matter, this term is not subject to 35 U.S.C. § 112 ¶ 6 for the reasons discussed above in Section III.A. Regardless, here, the parties agree on the recited function, but disagree on the corresponding structure. If this term were subject to 35 U.S.C. § 112 ¶ 6 (and it is not), Defendant's proposed construction should further be rejected because it recites structure that is unnecessary to perform the recited function. As discussed in Section III.A, above, **the correct corresponding structure is**: "multiple access presence agent with presence server, and equivalents thereof". That is all that is required. *See* '550 patent, 1:63-2:2, 7:9-30, 7:61-8:7, 8:8-22, Figs. 3, 5. Defendant's proposal to include "presence user agent 140, and communications network 130" is unnecessary to perform the recited function. *See Acromed*, 253 F.3d at 1382 ("a court may not import into the claim structural limitations from the written description that are unnecessary to perform the claimed function."); *Micro Chem. Inc.*, 194 F.3d at 1258. For example, the specification describes that the presence agent grants a presence contributor A with the rights and privileges associated with the access rules for presence contributor A, which may include the ability to view, set, and/or change presence information about the presentity. '550 patent, 7:13-30. Nothing more is required.

Finally, Defendant also proposes the term is indefinite for failure to disclose an algorithm. Defendant is wrong for at least two reasons. First, Defendant is wrong because neither the claims or Defendant's own (improper) proposed structure recite a general-purpose computer or processor. *See Nevro Corp.,* 955 F.3d at 42-43. Second, to the extent disclosure of the algorithm is deemed to be necessary, the specification, as well as the claim itself, discloses **the corresponding algorithm**: "determine access rules for said one of said presence contributors and granting said one of said presence contributors the rights and privileges associated with said access rules." *See* '550 patent, 1:63-2:2, 7:9-30, 7:61-8:7, 8:8-22, Figs. 3, 5.

11.    **means for enabling access further includes means for filtering said presence information of said presentity based on said access rules of said one of said presence contributors to produce filtered presence information and means for providing said filtered presence information to said one of said presence contributors**

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning, not subject to 35 U.S.C. § 112 ¶ 6.<br><br>But if the Court deems this term is subject to 35 U.S.C. § 112 ¶ 6, and to the extent Defendant's proposal is understandable:<br>**Function 1 of 2**: filtering said presence information of said presentity based on said access rules of said one of said presence contributors to produce filtered presence information<br><br>**Structure 1 of 2**: multiple access presence agent with presence server, and equivalents thereof<br><br>Furthermore, if the Court deems disclosure of an algorithm is required:<br><br>**Algorithm 1 of 2**: select some or all of said presentity's presence information to allow said one of said presence contributor to access or view<br><br>**Function 2 of 2**: providing said filtered presence information to said one of said presence contributors<br><br>**Structure 2 of 2**: multiple access presence agent with presence server, and equivalents thereof<br><br>Furthermore, if the Court deems disclosure of an algorithm is required:<br><br>**Algorithm 2 of 2**: allow said one of said presence contributor to access or view the selected some or all of said presentity's presence information | "means for enabling access further includes means for filtering said presence information of said presentity based on said access rules of said one of said presence contributors to produce filtered presence information "<br><br>**Function**: filtering said presence information of said presentity based on said access rules of said one of said presence contributors to produce filtered presence information<br><br>**Structure**: presence server 160 and presence agent 150 with access rules 210<br><br>**Algorithm**: Not Disclosed<br><br>Term is Indefinite<br><br>"means for providing said filtered presence information to said one of said presence contributors"<br><br>**Function**: providing said filtered presence information to said one of said presence contributors<br><br>**Structure**: presence server 160, presence agent 150, presence user agent 140, and communications network 130 or 135<br><br>**Algorithm**: Not Disclosed<br><br>Term is Indefinite |

As an initial matter, this term is not subject to 35 U.S.C. § 112 ¶ 6 for the reasons discussed above in Section III.A. Regardless, Defendant misidentifies the alleged means-plus-function term by over-including claim language. And based on Defendant's proposed construction, it appears that Defendant admits as much by identifying two different functions for this "term". As it is Defendant who proposes this "term" for construction, and because WSOU does not want to guess as to Defendant's intention nor can WSOU read Defendant's mind, WSOU will address this "term" in the way Defendant has presented it, as having two separate functions and corresponding structures. However, to the extent WSOU can understand Defendant's proposal regarding this as a single "term" for construction, this is improper at least because The Federal Circuit has emphasized that in performing the first step, "a court may not construe a means-plus-function limitation 'by adopting a function different from that explicitly recited in the claim.'" *JVW Enterprises, Inc. v. Interact Accessories, Inc*., 424 F.3d 1324, 1331 (Fed. Cir. 2005), *quoting Micro Chem., Inc. v. Great Plains Chem. Co*., 194 F.3d 1250, 1258 (Fed. Cir. 1999).

Regardless, if this term were subject to 35 U.S.C. § 112 ¶ 6 (and it is not), and if this term was further evaluated as two separate terms (which Defendant did not propose and does not specify), then the identified functions proposed by Defendant is addressed separately below:

For the alleged function: "filtering said presence information of said presentity based on said access rules of said one of said presence contributors to produce filtered presence information", Defendant's proposed construction should further be rejected because it recites structure that is unnecessary to perform the recited function. As discussed in Section III.A, above, **the correct corresponding structure is**: "multiple access presence agent with presence server, and equivalents thereof". That is all that is required. *See* '550 patent, 4:44-55, 5:48-6:11, 7:48-54, 8:1-4, Figs. 4, 5; *see also id.*, 8:18-22. Defendant's proposal to include "access rules 210" is

unnecessary to perform the recited function. *See Acromed*, 253 F.3d at 1382 ("a court may not import into the claim structural limitations from the written description that are unnecessary to perform the claimed function."); *Micro Chem. Inc*., 194 F.3d at 1258. Here, the access rules are expressly recited in the proposed function itself, and furthermore, as the specification describes, while the access rules are an input in performing the filtering, the actual performance of filtering is accomplished by the multiple access presence agent. *See* '550 patent, 5:48-6:11. And Defendant also proposes the proposed function/"term" is indefinite for failure to disclose an algorithm. Defendant is wrong for at least two reasons. First, Defendant is wrong because neither the claims or Defendant's own (improper) proposed structure recite a general-purpose computer or processor. *See Nevro Corp.,* 955 F.3d at 42-43. Second, to the extent disclosure of the algorithm is deemed to be necessary, the specification, as well as the claim itself, discloses **the corresponding algorithm**: "select some or all of said presentity's presence information to allow said one of said presence contributor to access or view." *See* '550 patent, 4:44-55, 5:48-6:11, 7:48-54, 8:1-4, Figs. 4, 5.

Next, for the alleged function: "providing said filtered presence information to said one of said presence contributors", Defendant's proposed construction should further be rejected because it recites structure that is unnecessary to perform the recited function. As discussed in Section III.A, above, **the correct corresponding structure is**: "multiple access presence agent with presence server, and equivalents thereof". That is all that is required. *See* '550 patent, 4:44-55, 5:48-6:11, 7:48-54, 8:1-4, Figs. 4, 5; *see also id.*, 8:18-22. Defendant's proposal to include "presence user agent 140, and communications network 130 or 135" is unnecessary to perform the recited function. *See Acromed*, 253 F.3d at 1382 ("a court may not import into the claim structural limitations from the written description that are unnecessary to perform the claimed function.");

*Micro Chem. Inc.*, 194 F.3d at 1258. For example, the specification describes that the multiple access presence agent may have access rules that cause presence contributor A to only access/view some or all of a presentity's presence information. '550 patent, 5:48-6:11.

Defendant also asserts the claim language is indefinite ostensibly because there is no disclosure of a corresponding algorithm. Defendant is wrong for at least two reasons. First, neither the claims or Defendant's own (improper) proposed structure recite a general-purpose computer or processor. *See Nevro Corp.,* 955 F.3d at 42-43. Second, to the extent disclosure of the algorithm is deemed to be necessary, the specification, as well as the claim itself, discloses **the corresponding algorithm**: "allow said one of said presence contributor to access or view the selected some or all of said presentity's presence information." *See* '550 patent, 4:44-55, 5:48-6:11, 7:48-54, 8:1-4, Figs. 4, 5.

> 12. **means for enabling access further includes means for enabling said one of said presence contributors to update said presence information of said presentity based on said access rules of said one of said presence contributors**

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning, not subject to 35 U.S.C. § 112 ¶ 6.<br><br>But if the Court deems this term is subject to 35 U.S.C. § 112 ¶ 6:<br>**Function**: enabling said one of said presence contributors to update said presence information of said presentity based on said access rules of said one of said presence contributors<br><br>**Structure**: multiple access presence agent with presence server, and equivalents thereof<br><br>Furthermore, if the Court deems disclosure of an algorithm is required:<br><br>**Algorithm**: providing one of said presence | **Function**: enabling said one of said presence contributors to update said presence information of said presentity based on said access rules of said one of said presence contributors<br><br>**Structure**: presence contributors 120, presence server 160, presence agent 150 with access rules 210, presence user agent 140, and communications network 130<br><br>**Algorithm**: Not Disclosed<br><br>Term is Indefinite |

21

| contributors the ability to set/change the presence information of said presentity subject to any limits on the ability according to said access rules | |
|---|---|

As an initial matter, this term is not subject to 35 U.S.C. § 112 ¶ 6 for the reasons discussed above in Section III.A. And Defendant misidentifies the alleged means-plus-function term by over-including claim language. Regardless, here, the parties agree on the recited function, but disagree on the corresponding structure. If this term were subject to 35 U.S.C. § 112 ¶ 6 (and it is not), Defendant's proposed construction should further be rejected because it recites structure that is unnecessary to perform the recited function. As discussed in Section III.A, above, **the correct corresponding structure is**: "multiple access presence agent with presence server, and equivalents thereof". That is all that is required. *See* '550 patent, 5:48-6:1, 6:12-22, 7:13-30, 7:54-60, 7:65-8:4; *see also id.*, 8:18-22. Defendant's proposal to include "presence contributors 120, access rules 210, presence user agent 140, and communications network 130" is unnecessary to perform the recited function. *See Acromed*, 253 F.3d at 1382 ("a court may not import into the claim structural limitations from the written description that are unnecessary to perform the claimed function."); *Micro Chem. Inc.*, 194 F.3d at 1258. For example, the specification describes that in order to restrict access to the presence information managed by multiple presence agents, access rules may be created to define the scope and/or ability of a presence contributor to set/change the presence information of a presentity. '550 patent, 5:48-6:22; *see also id.*, 8:18-22. Only the multiple access presence agent and presence server are necessary to perform the recited function. The access rules are only an input to performing the recited function and do no perform the recited function, the presence contributors only allowed provide further inputs and do not perform the recited function, and the rest of Defendant's extraneous proposal, presence user agent, and communications network have no role in the performance of the recited function.

Finally, Defendant also proposes the term is indefinite for failure to disclose an algorithm. Defendant is wrong for at least two reasons. First, Defendant is wrong because neither the claims or Defendant's own (improper) proposed structure recite a general-purpose computer or processor. *See Nevro Corp.,* 955 F.3d at 42-43. Second, to the extent disclosure of the algorithm is deemed to be necessary, the specification, as well as the claim itself, discloses **the corresponding algorithm**: "providing one of said presence contributors the ability to set/change the presence information of said presentity subject to any limits on the ability according to said access rules." *See* '550 patent, 5:48-6:1, 6:12-22, 7:13-30, 7:54-60, 7:65-8:4.

> 13.   **means for enabling access further includes means for enabling said one of said presence contributors to define preference information associated with said presence information of said presentity based on said access rules of said one of said presence contributors**

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning, not subject to 35 U.S.C. § 112 ¶ 6.<br><br>But if the Court deems this term is subject to 35 U.S.C. § 112 ¶ 6:<br>**Function**: enabling said one of said presence contributors to define preference information associated with said presence information of said presentity based on said access rules of said one of said presence contributors<br><br>**Structure**: multiple access presence agent with presence server, and equivalents thereof<br><br>Furthermore, if the Court deems disclosure of an algorithm is required:<br><br>**Algorithm**: providing one of said presence contributors the ability to set/change the preference information of said presentity subject to any limits on the ability according to said access rules | **Function**: enabling said one of said presence contributors to define preference information associated with said presence information of said presentity based on said access rules of said one of said presence contributors<br><br>**Structure**: presence server 160, presence agent 150 with access rule 210, presence user agent 140, and communications network 130<br><br>**Algorithm**: Not Disclosed<br><br>Term is Indefinite |

As an initial matter, this term is not subject to 35 U.S.C. § 112 ¶ 6 for the reasons discussed above in Section III.A. And Defendant misidentifies the alleged means-plus-function term by over-including claim language. Regardless, here, the parties agree on the recited function, but disagree on the corresponding structure. If this term were subject to 35 U.S.C. § 112 ¶ 6 (and it is not), Defendant's proposed construction should further be rejected because it recites structure that is unnecessary to perform the recited function. As discussed in Section III.A, above, **the correct corresponding structure is**: "multiple access presence agent with presence server, and equivalents thereof". That is all that is required. *See* '550 patent, 4:44-55, 5:48-52, 6:23-31, 7:13-30; *see also id.*, 8:18-22. Defendant's proposal to include "access rule 210, presence user agent 140, and communications network 130" is unnecessary to perform the recited function. *See Acromed*, 253 F.3d at 1382 ("a court may not import into the claim structural limitations from the written description that are unnecessary to perform the claimed function."); *Micro Chem. Inc.*, 194 F.3d at 1258. For example, the specification describes that in order to restrict access to the presence information managed by multiple presence agents, access rules may be created to define the scope and/or ability of a presence contributor to set/change the preference information of a presentity. '550 patent, 5:48-52, 6:23-31; *see also id.*, 8:18-22. Only the multiple access presence agent and presence server are necessary to perform the recited function. The access rules are only an input to performing the recited function and do not perform the recited function, and the presence user agent and communications network have no role in the performance of the recited function.

Finally, Defendant also proposes the term is indefinite for failure to disclose an algorithm. Defendant is wrong for at least two reasons. First, Defendant is wrong because neither the claims or Defendant's own (improper) proposed structure recite a general-purpose computer or processor. *See Nevro Corp.,* 955 F.3d at 42-43. Second, to the extent disclosure of the algorithm is deemed

24

to be necessary, the specification, as well as the claim itself, discloses **the corresponding algorithm**: "<u>providing one of said presence contributors the ability to set/change the preference information of said presentity subject to any limits on the ability according to said access rules</u>."

*See* '550 patent, 5:48-52, 6:23-31; *see also id.*, 8:18-22.

> 14.   **means for authenticating further includes means for assigning authentication credentials to each of said presence contributors and means for receiving said authentication credentials of said one of said presence contributors to authenticate said one of said presence contributors**

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning, not subject to 35 U.S.C. § 112 ¶ 6.<br><br>But if the Court deems this term is subject to 35 U.S.C. § 112 ¶ 6, and to the extent Defendant's proposal is understandable:<br>**Function 1 of 2**: assigning authentication credentials to each of said presence contributors<br><br>**Structure 1 of 2**: multiple access presence agent with presence server, and equivalents thereof<br><br>Furthermore, if the Court deems disclosure of an algorithm is required:<br><br>**Algorithm 1 of 2**: associating authentication credentials with each of said presence contributors<br><br>**Function 2 of 2**: receiving said authentication credentials of said one of said presence contributors to authenticate said one of said presence contributors<br><br>**Structure 2 of 2**: multiple access presence agent with presence server, and equivalents thereof<br><br>Furthermore, if the Court deems disclosure of | "means for assigning authentication credentials to each of said presence contributors"<br><br>**Function**: assigning authentication credentials to each of said presence contributors<br><br>**Structure**: presentity 110 and presence server 160 with presence agent 150<br><br>**Algorithm**: Not Disclosed<br><br>Term is Indefinite<br><br>"means for receiving said authentication credentials of said one of said presence contributors to authenticate said one of said presence contributors"<br><br>**Function**: receiving said authentication credentials of said one of said presence contributors to authenticate said one of said presence contributors<br><br>**Structure**:<br>presence contributors 120, presence server 160, presence agent 150, presence user agent 140, and communications network 130 or 135<br><br>**Algorithm**: Not Disclosed<br><br>Term is Indefinite |

| | |
|---|---|
| an algorithm is required:<br><br>**Algorithm 2 of 2**: not required under *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303 (Fed. Cir. 2011) | |

As an initial matter, this term is not subject to 35 U.S.C. § 112 ¶ 6 for the reasons discussed above in Section III.A. Regardless, Defendant misidentifies the alleged means-plus-function term by over-including claim language. And based on Defendant's proposed construction, it appears that Defendant admits as much by identifying two different functions for this "term". As it is Defendant who proposes this "term" for construction, and because WSOU does not want to guess as to Defendant's intention nor can WSOU read Defendant's mind, WSOU will address this "term" in the way Defendant has presented it, as having two separate functions and corresponding structures. However, to the extent WSOU can understand Defendant's proposal regarding this as a single "term" for construction, this is improper at least because The Federal Circuit has emphasized that in performing the first step, "a court may not construe a means-plus-function limitation 'by adopting a function different from that explicitly recited in the claim.'" *JVW Enterprises*, 424 F.3d at 1331, *quoting Micro Chem.*, 194 F.3d at 1258.

Regardless, if this term were subject to 35 U.S.C. § 112 ¶ 6 (and it is not), and if this term was further evaluated as two separate terms (which Defendant did not propose and does not specify), then the identified functions proposed by Defendant is addressed separately below:

For the alleged function: "assigning authentication credentials to each of said presence contributors", Defendant's proposed construction should further be rejected because it recites structure that is unnecessary to perform the recited function. As discussed in Section III.A, above, **the correct corresponding structure is**: "multiple access presence agent with presence server, and equivalents thereof". That is all that is required. *See* '550 patent, 2:21-26, 6:44-57, 7:4-12,

26

7:42-47, 8:5-22, Fig. 5. Defendant's proposal to include "presentity 110" is unnecessary to perform the recited function. *See Acromed*, 253 F.3d at 1382 ("a court may not import into the claim structural limitations from the written description that are unnecessary to perform the claimed function."); *Micro Chem. Inc.*, 194 F.3d at 1258. Here, the presentity isn't involved in any way with the authentication credentials of the presence contributors. Additionally, as the specification discusses, the authentication credentials for each presence contributor are assigned by the presence agent and provided to the presence contributors and maintained by the presence agent for later use in authenticating the presence contributors. *See* '550 patent, 6:54-57. And Defendant also proposes the proposed function/"term" is indefinite for failure to disclose an algorithm. Defendant is wrong for at least two reasons. First, Defendant is wrong because neither the claims or Defendant's own (improper) proposed structure recite a general-purpose computer or processor. *See Nevro Corp.*, 955 F.3d at 42-43. Second, to the extent disclosure of the algorithm is deemed to be necessary, the specification, as well as the claim itself, discloses **the corresponding algorithm**: "<u>associating authentication credentials with each of said presence contributors.</u>" *See* '550 patent, 2:21-26, 6:44-57, 7:4-12, 7:42-47, 8:5-22, Fig. 5.

Next, for the alleged function: "receiving said authentication credentials of said one of said presence contributors to authenticate said one of said presence contributors", Defendant's proposed construction should further be rejected because it recites structure that is unnecessary to perform the recited function. As discussed in Section III.A, above, **the correct corresponding structure is**: "<u>multiple access presence agent with presence server, and equivalents thereof</u>". That is all that is required. *See* '550 patent, 1:32-34, 2:21-26, 6:44-57, 7:4-12, 7:42-47, 8:5-22, Fig. 5. Defendant's proposal to include "presence contributors 120, presence user agent 140, and communications network 130 or 135" is unnecessary to perform the recited function. *See Acromed*,

253 F.3d at 1382 ("a court may not import into the claim structural limitations from the written description that are unnecessary to perform the claimed function."); *Micro Chem. Inc.*, 194 F.3d at 1258. The presence contributors only provide an input into the function, and presence user agent, and communications network are not involved in performing the function of "receiving said authentication credentials…".  As the specification discusses, "the authentication credentials of one of the presence contributors are received at the multiple presence agent."  *See* '550 patent, 8:8-10.

Defendant also objects that the term is indefinite allegedly because the specification fails to disclose an algorithm. Defendant is wrong for at least two reasons. First, neither the claims or Defendant's own (improper) proposed structure recite a general-purpose computer or processor. *See Nevro Corp.,* 955 F.3d at 42-43. Second, the court need not search for a disclosed algrothim here because the claim language recites sufficient structure—i.e., "multiple access presence agent with presence server, and equivalents thereof". In the Federal Circuit's decision in *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303 (Fed. Cir. 2011), the Federal Circuit states that "[a]bsent a possible narrower construction of the terms "processing," "**receiving**," and "storing," discussed below, those functions can be achieved by any general purpose computer without special programming. As such, it [is] not necessary to disclose more structure than the general purpose processor that performs those functions." *In re Katz*, 639 F.3d 1316 (emphasis added). And other courts have agreed and found that "means for receiving" functions do not require an algorithm. *See e.g. Finjan, Inc. v. Sophos, Inc*., No. 14-CV-01197-WHO, 2015 WL 890621, at *8-9 (N.D. Cal. Mar. 2, 2015) (holding that the patent need not specify an algorithm as the corresponding structure to the simple 'Receiving a Downloadable' function); *Freeny v. Murphy USA Inc*., No. 2:13-CV-791-RSP, 2015 WL 294102, at *37 (E.D. Tex. Jan. 21, 2015) ('means for

receiving' data does not require algorithm); *e-LYNXX Corp. v. Innerworkings, Inc*., No. 1:10-CV-2535, 2012 WL 4484921, at *19 (M.D. Pa. Sept. 27, 2012) ('means for receiving an electronic communication' does not require disclosed algorithm).

> 15.  **means for enabling further includes means for enabling access to said presence information of said presentity by multiple ones of said presence contributors simultaneously based on said respective access rules associated with said multiple ones of said presence contributors**

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning, not subject to 35 U.S.C. § 112 ¶ 6.<br><br>But if the Court deems this term is subject to 35 U.S.C. § 112 ¶ 6:<br>**Function**: enabling access to said presence information of said presentity by multiple ones of said presence contributors simultaneously based on said respective access rules associated with said multiple ones of said presence contributors<br><br>**Structure**: multiple access presence agent with presence server, and equivalents thereof<br><br>Furthermore, if the Court deems disclosure of an algorithm is required:<br><br>**Algorithm**: provide access by multiple ones of said presence contributors simultaneously to said presence information of said presentity, each of said presence contributors possibly having different rights and privileges to said presence information based on said respective access rules | **Function**: enabling access to said presence information of said presentity by multiple ones of said presence contributors simultaneously based on said respective access rules associated with said multiple ones of said presence contributors<br><br>**Structure**: presence server 160, presence agent 150, presence user agents 140, and communications network 130<br><br>**Algorithm**: Not Disclosed<br><br>Term is Indefinite |

As an initial matter, this term is not subject to 35 U.S.C. § 112 ¶ 6 for the reasons discussed above in Section III.A. And Defendant misidentifies the alleged means-plus-function term by over-including claim language. Regardless, here, the parties agree on the recited function, but disagree on the corresponding structure. If this term were subject to 35 U.S.C. § 112 ¶ 6 (and it is not),

29

Defendant's proposed construction should further be rejected because it recites structure that is unnecessary to perform the recited function. As discussed in Section III.A, above, **the correct corresponding structure is**: "multiple access presence agent with presence server, and equivalents thereof". That is all that is required. *See* '550 patent, 1:32-51, 5:24-27, 5:48-6:1, 6:32-43, 6:58-7:30, 8:5-22, Fig. 3. Defendant's proposal to include "presence user agents 140, and communications network 130" is unnecessary to perform the recited function. *See Acromed*, 253 F.3d at 1382 ("a court may not import into the claim structural limitations from the written description that are unnecessary to perform the claimed function."); *Micro Chem. Inc.*, 194 F.3d at 1258. For example, the specification describes that the multiple access presence agent may be accessed by multiple presence contributors ('550 patent 5:24-27), and based on the respective access rules for each of the multiple presence contributors, the multiple presence contributors may simultaneously access the presence information of the presentity, each having different rights and privileges. '550 patent 6:32-43; *see also id.*, 7:12-30 (simultaneous access to the presence information of the presentity where presence contributor A may view, set and/or change presence information of the presentity based on access rules associated with presence contributor A, and presence contributor B may view, set and/or change presence information of the presentity based on access rules associated with presence contributor B.). Only the multiple access presence agent and presence server are necessary to perform the recited function. The presence user agent and communications network have no role in the performance of the recited function.

Finally, Defendant also proposes the term is indefinite for failure to disclose an algorithm. Defendant is wrong for at least two reasons. First, Defendant is wrong because neither the claims or Defendant's own (improper) proposed structure recite a general-purpose computer or processor. *See Nevro Corp.,* 955 F.3d at 42-43. Second, to the extent disclosure of the algorithm is deemed

30

to be necessary, the specification, as well as the claim itself, discloses **the corresponding algorithm**: "provide access by multiple ones of said presence contributors simultaneously to said presence information of said presentity, each of said presence contributors possibly having different rights and privileges to said presence information based on said respective access rules." *See* '550 patent, 5:48-52, 6:23-31; *see also id.*, 8:18-22.

>    16.   **means for enabling further includes means for providing hierarchical access by said presence contributors to said presence information of said presentity**

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning, not subject to 35 U.S.C. § 112 ¶ 6.<br><br>But if the Court deems this term is subject to 35 U.S.C. § 112 ¶ 6:<br>**Function**: providing hierarchical access by said presence contributors to said presence information of said presentity<br><br>**Structure**: multiple access presence agent with presence server, and equivalents thereof<br><br>Furthermore, if the Court deems disclosure of an algorithm is required:<br><br>**Algorithm**: provide access by presence contributors to said presence information of said presentity according to a priority where presence contributors having a lower priority are denied access to said presence information of said presentity while a presence contributor having a higher priority is accessing said presence information of said presentity | **Function**: providing hierarchical access by said presence contributors to said presence information of said presentity<br><br>**Structure**: presence server 160, presence agent 150, presence user agent 140, and communications network 130 or 13<br><br>**Algorithm**: Not Disclosed<br><br>Term is Indefinite |

As an initial matter, this term is not subject to 35 U.S.C. § 112 ¶ 6 for the reasons discussed above in Section III.A. And Defendant misidentifies the alleged means-plus-function term by over-including claim language. Regardless, here, the parties agree on the recited function, but disagree on the corresponding structure. If this term were subject to 35 U.S.C. § 112 ¶ 6 (and it is not),

Defendant's proposed construction should further be rejected because it recites structure that is unnecessary to perform the recited function. As discussed in Section III.A, above, **the correct corresponding structure is**: "multiple access presence agent with presence server, and equivalents thereof". That is all that is required. *See* '550 patent, 1:32-51, 5:24-27, 5:48-6:1, 6:32-43, 6:58-7:30, 8:5-22, Fig. 3. Defendant's proposal to include "presence user agent 140, and communications network 130 or 13" is unnecessary to perform the recited function. *See Acromed*, 253 F.3d at 1382 ("a court may not import into the claim structural limitations from the written description that are unnecessary to perform the claimed function."); *Micro Chem. Inc.*, 194 F.3d at 1258. For example, the specification describes that the multiple access presence agent may be accessed by multiple presence contributors ('550 patent 5:24-27), and under a hierarchical access of the presence information of the presentity, presence contributor B may be denied access to the presence information of the presentity while presence contributor A is accessing the presence information of the presentity. '550 patent 6:32-43. Only the multiple presence access agent and presence server are necessary to perform the recited function. The presence user agent and communications network have no role in the performance of the recited function.

Finally, Defendant also proposes the term is indefinite for failure to disclose an algorithm. Defendant is wrong for at least two reasons. First, Defendant is wrong because neither the claims or Defendant's own (improper) proposed structure recite a general-purpose computer or processor. *See Nevro Corp.,* 955 F.3d at 42-43. Second, to the extent disclosure of the algorithm is deemed to be necessary, the specification, as well as the claim itself, discloses **the corresponding algorithm**: "provide access by presence contributors to said presence information of said presentity according to a priority where presence contributors having a lower priority are denied access to said presence information of said presentity while a presence contributor having a higher

priority is <u>accessing said presence information of said presentity</u>." *See* '550 patent, 5:48-52, 6:23-31; *see also id.*, 8:18-22.

**B.    Other disputed terms (without the word "means")**

**17.    presentity / presentities**

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | the entity whose presence is being represented |

This term does not require any construction because a person of ordinary skill in the art would readily understand this term, especially upon review of the specification. Moreover, Defendant's proposed construction should be rejected at least because it is vague and confusing. First, it is not clear if Defendant intends to improperly limit the term to a single "entity" by prefacing it with the word "the". Second, the phrase "whose presence is being represented" is unclear and unhelpful. For example, it is not clear what "being represented means", and moreover, it is unnecessary. As the specification expressly states that "presentity 110 provides presence information indicating the presentity's presence state to presence system 100". '550 patent, 3:1-4. If Defendant's proposed construction is attempting to paraphrase that statement, it is unneeded and unhelpful. Finally, Defendant's use of the word "entity" is unclear and can only cause confusion. The specification expressly puts no limits on what a presentity may be, for example the specification states that **examples** of presentities "include, **but are not limited to**, a person (e.g., user, administrator, manager or personnel), a group of people, a service (e.g., Software application or data), a device or equipment (e.g., computer, fax machine or copy machine) and a facility (e.g., a room, an office or a building)."). *Id.* 2:62-67 (emphasis added). In other words, presentities can be anything and are without limit, so long as it can provide presence information indicating the presentity's presence state. In sum, Defendant's proposed construction is vague and confusing, and should be rejected.

33

18.     presence contributors

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | an entity that provides presence information about a presentity to a presence server or presence agent |

This term does not require any construction because a person of ordinary skill in the art would readily understand this term, especially upon review of the specification. Moreover, Defendant's proposed construction should be rejected at least because it is vague and confusing. First, Defendant's proposed construction seeking to limit the term to "provid[ing] presence information about a presentity to a presence server or presence agent" is unclear and unhelpful. For example, the claim language itself already recites a multiple access presence agent and presence server, and further the claim language also expressly recites, for example, enabling presence contributors to update presence information of a presentity. *See e.g.* '550 patent, claim 11, 10:31-34. Therefore, at best, Defendant's proposed construction is redundant and at worst Defendant's proposed construction is a bad paraphrasing of the claim language that is misleading. Next, Defendant's use of the word "entity" is unclear and can only cause confusion. The specification expressly puts no limits on what a presence contributor may be, for example the specification states that **examples** of presence contributors "include, **but are not limited to**, devices (e.g., telephone, printer or fax machine), services, software applications, facilities and users (e.g., user presentity, administrator, personnel and other users)."). *Id.* 3:10-14 (emphasis added). In other words, presence contributors can be anything and are without limit, so long as it can provide presence information indicating the presentity's presence state. In sum, Defendant's proposed construction is vague and confusing, and should be rejected.

Dated: January 8, 2021                    Respectfully submitted,

                          By:     */s/ Ryan Loveless*
                                  James L. Etheridge
                                  Texas Bar No. 24059147
                                  Ryan S. Loveless
                                  Texas Bar No. 24036997
                                  Brett A. Mangrum
                                  Texas Bar No. 24065671
                                  Travis L. Richins
                                  Texas Bar No. 24061296
                                  Jeffrey Huang
                                  Etheridge Law Group, PLLC
                                  2600 E. Southlake Blvd., Suite 120 / 324
                                  Southlake, TX 76092
                                  Tel.: (817) 470-7249
                                  Fax: (817) 887-5950
                                  Jim@EtheridgeLaw.com
                                  Ryan@EtheridgeLaw.com
                                  Brett@EtheridgeLaw.com
                                  Travis@EtheridgeLaw.com
                                  Jhuang@EtheridgeLaw.com

                                  Mark D. Siegmund
                                  State Bar No. 24117055
                                  mark@waltfairpllc.com
                                  Law Firm of Walt, Fair PLLC.
                                  1508 North Valley Mills Drive
                                  Waco, Texas 76710
                                  Telephone: (254) 772-6400
                                  Facsimile: (254) 772-6432

                                  *Counsel for Plaintiff WSOU Investments, LLC*

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing instrument was served or delivered electronically

via U.S. District Court [LIVE]- Document Filing System, to all counsel of record, on this the 8th

day of January, 2021.

                          */s/ James L. Etheridge*
                          James L. Etheridge