# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| **WSOU INVESTMENTS, LLC D/B/A** | § | **CIVIL ACTION 6:20-cv-00456-ADA** |
| **BRAZOS LICENSING AND** | § | **CIVIL ACTION 6:20-cv-00458-ADA** |
| **DEVELOPMENT,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **MICROSOFT CORPORATION,** | § | |
| *Defendant.* | § | |
| | § | |

## PLAINTIFF'S REPLY IN SUPPORT OF
## OPENING CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

I.     **Terms of U.S. Patent No. 7,388,868 (Case No. 6:20-cv-00458-ADA)** ............................1

    A.     **Agreed Terms of the '868 Patent** ...............................................................1

    B.     **Disputed Terms of the '868 Patent** ............................................................1

          3.     **"an emergency call router"** .....................................................1

          4.     **"access gateway"** .................................................................3

          5.     **"target gateway"** ..................................................................6

          6.     **"selectably operable" and "selectably routing"** .......................8

          7.     **Microsoft fails to prove indefiniteness of dependent claim 12 by clear and convincing evidence** ................................................................9

II.    **U.S. Patent No. 7,676,550 ( Case No. 6:20-cv-00456)  Disputed Claim Terms** ...........11

    A.     **Terms with the word "means"** .................................................................11

          8.     **means for defining access rules for each of said presence contributors, said access rules associated with each of said presence contributors defining respective rights and privileges of said presence contributors to access said presence information of said presentity after said presence contributors have provided said presence information to said presence server** ................................................................12

          9.     **means for authenticating one of said presence contributors to determine said access rules associated with said one of said presence contributors** ................................................................14

          10.     **means for enabling access to said presence information of said presentity by said one of said presence contributors based on said access rules associated with said one of said presence contributors** ...15

          11.     **means for enabling access further includes means for filtering said presence information of said presentity based on said access rules of said one of said presence contributors to produce filtered presence information and means for providing said filtered presence information to said one of said presence contributors** .........................16

          12.     **means for enabling access further includes means for enabling said one of said presence contributors to update said presence information**

of said presentity based on said access rules of said one of said presence contributors ....................................................................................18

13.    means for enabling access further includes means for enabling said one of said presence contributors to define preference information associated with said presence information of said presentity based on said access rules of said one of said presence contributors ..................20

14.    means for authenticating further includes means for assigning authentication credentials to each of said presence contributors and means for receiving said authentication credentials of said one of said presence contributors to authenticate said one of said presence contributors ....................................................................................21

15.    means for enabling further includes means for enabling access to said presence information of said presentity by multiple ones of said presence contributors simultaneously based on said respective access rules associated with said multiple ones of said presence contributors ....................................................................................23

B.    Other disputed terms (without the word "means")..........................................25

16.    presentity / presentities..........................................................25

17.    presence contributors ............................................................25

**TABLE OF AUTHORITIES**

**Cases**

*Acromed Corp. v. Sofamor Danek Group*,
    253 F.3d 1371 (Fed. Cir. 2001) ................................................................. 13

*Cisco Sys., Inc. v. TQ Delta*, *LLC*,
    928 F.3d 1359 (Fed. Cir. 2019) ................................................................... 3

*Fisher-Rosemount Sys., Inc. v. Invensys Sys., Inc.*,
    No. A-13-CA-587-SS, 2015 WL 1275910 (W.D. Tex. Mar. 19, 2015) ............... 3, 4

*Intellectual Ventures I LLC v. T-Mobile USA, Inc.*,
    902 F.3d 1372 (Fed. Cir. 2018) ................................................................... 2

*Lecat's Ventriloscope v. MT Tool & Mfg.*,
    351 F. Supp. 3d 1100 (N.D. Ill. 2018) .......................................................... 9

*Nevro Corp. v. Boston Scientific Corporation*,
    955 F.3d 35 (Fed. Cir. 2020) ................................................................. 12, 13

*Noah Sys., Inc. v. Intuit Inc.*,
    675 F.3d 1302 (Fed. Cir. 2012) ................................................................. 14

*Phillips v. AWH Corp.*,
    415 F.3d 1303, 1320 (Fed. Cir. 2005) ........................................................... 8

*Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*,
    844 F.3d 1370 (Fed. Cir. 2017) ................................................................. 14

*Spansion, Inc. v. Int'l Trade Comm'n*,
    629 F.3d 1331 (Fed. Cir. 2010) ................................................................... 9

*TecSec, Inc. v. Int'l Bus. Machs. Corp.*,
    731 F.3d 1336 (Fed. Cir. 2013) ................................................................. 11

*TriMed, Inc. v. Stryker Corp.*,
    514 F.3d 1256 (Fed. Cir. 2008) ................................................................. 11

*Typhoon Touch Techs., Inc. v. Dell, Inc.*,
    659 F.3d 1376 (Fed. Cir. 2011) ........................................................... passim

*Whirlpool Corp. v. Ozcan*,
    No. 2:15-CV-2103-JRG, 2016 WL 7474517 (E.D. Tex. Dec. 29, 2016) ............... 9

**Statutes**

35 U.S.C. § 112 ................................................................................................ passim

## I.     Terms of U.S. Patent No. 7,388,868 (Case No. 6:20-cv-00458-ADA)

### A.     Agreed Terms of the '868 Patent

Microsoft confirms its agreement that the term "emergency call *muter*" (term no. 1, recited only in dependent claim 12) should be construed here as "emergency call *router*" to correct a clerical error "made by the Patent Office." Dkt. 47, 2. Microsoft also offers no basis to dispute that the Court can and should take judicial notice that "the term 'the origination station' (term no. 2, recited in independent claims 1 and 18) makes antecedent reference to the term "an originating station" introduced in respective claim preambles." Dkt. 46, 3.

### B.     Disputed Terms of the '868 Patent[1]

### 3.     "an emergency call router"

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | back-up call router that is operable only when the communication link fails |

Microsoft fails to explain how its impermissible rewrite of the "emergency call router" term is not precluded by the claim language itself. WSOU had observed, for example, that claim 7 recites the "emergency call router" is "operable ***at least*** responsive to failure of the normal-operation communication link." Dkt. 46, 5. This independently "refutes Microsoft's interpretation that the 'emergency call router' is necessarily ***only*** operable when the communication link fails." *Id*. Microsoft's sole response is that claim 7 is directed to "the operation of a 'call priority determiner' not to the 'emergency call router.'" Dkt. 47, 9. But claim 7 recites "said emergency call router further comprises a call priority determiner." Because the "call priority determiner" is part of the "emergency call router," it follows that operation of the "call priority determiner" is necessarily an operation of the "emergency call router." Microsoft failed to defend its "***operable only***" rewrite against the demonstrable fact that claim 7 recites a feature of the "emergency call router" is "operable ***at least*** responsive to failure of the normal-operation communication link."

---

[1] WSOU's briefing addresses the claim terms according to the "default order of terms" set forth in the Court's OGP 3.2. It is unclear why Microsoft addressed the terms out of order.

The facts here are analogous to those considered in *Intellectual Ventures I LLC v. T-Mobile USA, Inc.*, 902 F.3d 1372, 1377−80 (Fed. Cir. 2018). There, the Federal Circuit rejected a narrowing construction as improperly excluding disclosed embodiments that were claimed in dependent claims. Refusing to introduce an extraneous "only" requirement into claim 1, the Circuit found that "[a]ny construction of claim 1 that required the resource allocator to allocate resources using *only* information obtained from application layer 7, and not from network layer 3 or transport layer 4, would render these dependent claims meaningless." *Id.* (emphasis added).

While Microsoft argues the specification compels its construction, the disclosure it cites reveals just the opposite. Microsoft first emphasizes a passage stating "[t]he apparatus is used when, ***e.g.,*** a total communication link failure condition occurs between the access gateway and the softswitch." Dkt. 47, 8 (quoting '868 patent, Abstract) (emphasis altered). Setting aside that the statement refers to the "apparatus" in general, and not the emergency call router in particular, the use of "*e.g.,*" reveals disclosure of but one ***example*** use—i.e., it is not necessarily the ***only*** use. Far from unambiguously requiring an "only" qualifier, the Abstract directly refutes it.

Microsoft also spills much ink in quoting (without accompanying explanation) certain disclosure addressing example embodiments. Dkt. 47, 8 (collecting citations). None of the quotations, however, unambiguously require that the "emergency call router" is *only* operational when the communication link fails. That certain embodiments describe the failure of a communication link as an example condition which may trigger certain operability does not mean that the claimed "emergency call router" must otherwise remain completely inoperable.

It is telling that Microsoft avoided certain passages that undermine its narrowing rewrite. For example, the '868 patent discloses "[t]he emergency call router 48 is operable to provide selected, rudimentary local call control functionality to the access gateway and the local network associated with the gateway." '868 patent, 7:41−43. Several examples of such calls are disclosed. *Id.*, 7:44−55. One such example refers to routing "[h]igher-priority calls . . . prior to lower-priority calls." *Id.* This reflects at least the language of claim 7, where the "emergency call router" has a "call ***priority*** determiner" that is "operable ***at least*** [(i.e., ***not only***)] responsive to failure of the

normal-operation communication link." *Id.*, 10:58−60. At the close of that same paragraph, the '868 patent states, "[u]pon failure of the communication link, many of ***such calls*** are ***no longer*** able to be completed." *Id.*, 7:55−56 (emphasis added). The above disclosure confirms the understanding that the emergency call router may operate to provide certain call functionality even before failure of the communication link. Similarly, the paragraph that follows provides exemplary operations of the emergency call router that are not explicitly limited as being implemented only when the communication link fails. *Id.*, 7:57−8:12.

Even if the specification had only disclosed one embodiment in which the only described operation of the emergency call router was a back-up call routing function when the communication link fails, which is not the case here, it still would be improper to import this as a claim limitation. *Cisco Sys., Inc. v. TQ Delta, LLC*, 928 F.3d 1359, 1364 (Fed. Cir. 2019) ("[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited") (quoting *Liebel-Flarsheim Co v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004)).

### 4. "access gateway"

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | gateway coupled to the packet data network for communication with a softswitch |

Microsoft falsely asserts that the '868 patent provides lexicography for the disputed term. Dkt. 47, 3 n.2 ("WSOU cannot fairly dispute that the specification defines 'gateways' as '[d]evices [that] form gateways to the packet data network.'") (partially quoting '868 patent, 2:26−29); *see also id.*, 4. The quoted statement is not reasonably interpreted as being a lexicographic requirement for the *claimed inventions*, but rather it appears only in the *background* section of the '868 patent in discussing the art in general. *See Fisher-Rosemount Sys., Inc. v. Invensys Sys., Inc.*, No. A-13-CA-587-SS, 2015 WL 1275910, at *11 (W.D. Tex. Mar. 19, 2015) ("Lexicography only arises

when the patent drafter 'clearly, deliberately, and precisely define[s] the term.'") (quoting *Sinorgchem Co., Shandong v. Int'l Trade Comm'n*, 511 F.3d 1132, 1136 (Fed. Cir. 2007)).

Microsoft's impermissible attempt to import a *background* description of a "packet data network" as a claim limitation also flies in the face of what the '868 patent states *immediately after* the background section: "[t]he present invention, accordingly, advantageously provides call-routing apparatus, and an associated method, by which to provide at least rudimentary call routing functions to route a call in a packet-based, ***or other***, communication system." '868 patent, 3:28−33 (emphasis added). Use of "or other" here in describing "the present invention" expressly refutes importing "packet data network" is an affirmative claim limitation; and it also refutes Microsoft's strained interpretation of the background section as containing clear, deliberate, and precise lexicography for the claimed inventions. *Fisher-Rosemount*, 2015 WL 1275910, at *11.

Microsoft also concedes that, in the context of the claims, "access" is not a "generic qualifier" but rather "defines a particular gateway." Dkt. 47, 3. WSOU agrees the "access" qualifier is *itself* definitional, which only underscores that no construction is required here. Notwithstanding Microsoft's concession, its proposed construction *removes* the admittedly definitional "access" qualifier altogether. Claim construction is not an exercise at swapping a party's preferential phrasing for a word that is *itself* admittedly definitional.

Microsoft also falsely asserts that its construction is somehow necessary to explain "how [the access gateway] fits into the claimed communication system." Dkt. 47, 4. Setting aside that *explaining* the invention is the purview of the specification, not the claims, Microsoft unduly diminishes the surrounding contexts in which the "access gateway" term is recited. Claim 18, for example, recites how the "access gateway" is interrelated with other claim elements as follows: "connecting the emergency call router, as a preliminary operation, between at least a first access gateway and a target gateway of the communication system." '868 patent, 12:31−34. Claim 1 (the only other independent claim of the '868 patent) similarly recites the "access gateway" in the context of it being "coupled to" an "emergency call router" (10:17−18), which likewise has other system interrelationship limitations directed thereto (10:17−29). Claims depending from claim 1

4

recite *additional* system interrelationships. *See*, *e.g.*, claim 2 ("said emergency call router is embodied at the first access gateway"); claim 3 ("said emergency call router forms a standalone entity, connectable to the access gateway"); claim 4 ("the access gateway comprises a functional aggregation point at which a first gateway device and at least a second gateway device are connected and wherein said emergency call router is coupled to the functional aggregation point"). The specific interrelationship of elements set forth in the claims reveals that when a particular interrelationship with the "access gateway" is required, it is recited. It would be erroneous, therefore, to import examples from the specification as claim limitations, as Microsoft proposes.

Microsoft errs in not only seeking to add the requirement that each recited "access gateway" must be "coupled to the *packet data network*" (an *unrecited* element), but also in seeking to add the functional requirement, "for communication with the *softswitch*" (also an *unrecited* element). Microsoft fails to establish that either extraneous limitation is "unambiguously required" in the claim language or intrinsic evidence. Dkt. 46, 6−7 (collecting cases). Moreover, Microsoft's impermissible rewrite is inconsistent with the context of the claim language. An overview of an example embodiment described with reference to Fig. 1 illustrates the point.



'868 patent, Fig. 1 (reproduced in part, coloring added for emphasis).

Fig. 1 illustrates a non-limiting example of an access gateway 16-1 (abbreviated AGW and colored green above) that may be in communication with and/or a part of what is referred to as "[a]pparatus 38 of an embodiment of the present invention" (apparatus 38 is colored yellow above). *Id.*, 7:10. The softswitch 34 (abbreviated SS and colored red above) and PDN 14 are both shown as opposite a communication failure 44 (also colored red). This disclosure proscribes restricting "access gateway" *in the context of the claims* in terms of (1) necessarily being coupled to a packet data network and (2) necessarily employing the function "for communication with the softswitch." Indeed, Microsoft's construction risks excluding the illustrated embodiment where access gateway 16-1 operates even when softswitch 34 and PDN 14 are both opposite failure 44.

Perhaps in late recognition of these fatal flaws in its construction, Microsoft relegates to a footnote an *entirely new* and *inconsistent* position that its "construction could be readily amended to swap 'communication system controller' for 'softswitch.'" Dkt. 47, 6 n.3. Microsoft's vacillation here only underscores that neither one of its alternative constructions is unambiguously required by the intrinsic evidence. Dkt. 46, 6−7. Even if one were to set aside the lateness of Microsoft's alternative construction (*id.*), which it fails to expressly request that the Court adopt, the '868 patent discloses clear distinctions between the *unrecited* softswitch 34 and the *recited* "communication system controller." Microsoft's terse suggestion that "softswitch" and "comm. system controller" may be interchanged in its proposed construction, without affecting claim scope or meaning, is simply an untimely, unsupported, and insupportable proposition. Dkt. 47, 6 n.3.

Finally, Microsoft belatedly alleges a lack of clarity with respect to certain recitations of the "access gateway" term. Dkt 47, 4 (pointing, *inter alia*, to "the access gateway" recited in claim 1). The time to disclose indefiniteness challenges has passed, and at this late stage, any alleged indefiniteness contention against an "access gateway" term should be deemed waived.

### 5. "target gateway"

| WSOU's Proposed Construction | Defendant's Proposed Construction |
| --- | --- |
| Plain and ordinary meaning | gateway coupled to the emergency call router and separate from the access gateway |

Microsoft mischaracterizes the dispute over this term as "whether 'target gateway' and 'access gateway' can properly be construed to mean the same gateway." Dkt. 47, 10. Microsoft's strawman attack (offered without citation) falsely suggests WSOU has offered a definition for this term. Not so. WSOU has consistently held that "target gateway" should be afforded its plain and ordinary meaning, in view of the *varying* contexts in which it is recited. The dispute here is more accurately characterized as whether Microsoft has sufficiently defended *its* attempt to add *two* distinct requirements (i.e., *both* (1) "coupled to . . ." *and* (2) physically "separate") for *every instance* "target gateway" is recited. Dkt. 47, 10 (erroneously seeking to construe "target away" as "gateway coupled to the emergency call router and separate from the access gate"). It has not.

Microsoft does not dispute its construction is presumptively incorrect because it would render superfluous certain claim language recited in claim 1. Dkt. 46, 8 (citing *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1410 (Fed. Cir. 2004) ("interpretations that render some portion of the claim language superfluous are disfavored.")). Nor does Microsoft dispute its construction is presumptively incorrect because it would "import—*literally verbatim*—a limitation from claim 1 into claim 18." *Id*. (citing *SRI Intern. v. Matsushita Elec. Corp. of America*, 775 F.2d 1107, 1122 (Fed. Cir. 1985) (*en banc*) ("It is settled law that when a patent claim does not contain a certain limitation and another claim does, that limitation cannot be read into the former claim.")). Both presumptions stand unrebutted because Microsoft opted to ignore them both in its response.

Microsoft also points to no intrinsic evidence unambiguously requiring that the claimed "access gateway" must be physically "separate from" the claimed "target gateway." While the burden does not rest with WSOU to prove a negative, several counterexamples exist. For example, the specification offers the following description of an illustrated embodiment: "[w]hile separately identified for purposes of illustration, the gateways form integral parts of the network." '868 patent, 5:55−57. In addition, certain gateways may each be connected via the same aggregation point. *Id*., 6:3−8. The '868 patent further discloses that the access gateway may, in some instances, *embody* other claimed components, such as the emergency call router. *Id*., 7:37−39. Microsoft does not contest that certain "dependent claims confirm that there is not necessarily physical

separation between elements introduced in claim 1." Dkt. 46, 8. These examples collectively reveal that the recitation of two elements in the claims does not necessarily require *physical separation* of those two elements. Microsoft's attempt to add "separate from" should be rejected.

### 6. "selectably operable" and "selectably routing"

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | deciding whether to permit a call to be routed based on call-type or call priority |

Microsoft oversimplifies the dispute over these terms as "whether claim terms using the contrived term 'selectably' require construction." Dkt. 47, 12. The dispute is more correctly characterized as whether Microsoft has justified its attempt to import as claim limitations its interpretation of disclosure directed to *how* "selectable operable" or "selectably routing" may be effected in certain embodiments, without actually offering *any* definition for *any* word recited in the disputed terms. Microsoft argues its construction "aligns with the breadth of the specification" by restricting "selectably" to an *unrecited decision* that *must* be based on what Microsoft identifies as two alternative options. *Id*. But an analogous argument could be made for every other transgression of the "cardinal sin" of reading limitations from the specification into the claims. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1320 (Fed. Cir. 2005) ("One of the cardinal sins of patent law [is] reading a limitation from the written description into the claims.") (quoting *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001)).

A holistic view of the claim language reveals no construction is required. Dkt. 46, 9−10. Claim 1 recites "said emergency call router *selectably operable . . . for routing the call of the first selected call-type*." Claim 1 further recites "said emergency call router *determines whether the call request is for a call of the first selected call-type prior to said operation of routing the call of the first selected call-type*." When viewed in context, therefore, the "selectably" qualifier does not refer to a *separate*, *unrecited* decision, as Microsoft argues. Rather, it simply reflects that the routing operation is not performed unless at least "the emergency call router determines [that] the call request is for a call of the first selected call-type."

A plain reading of claim 18 likewise reveals no construction is required. Claim 18 recites the "selectably routing" term within the context, "selectably routing a call request of the selected call-type." Claim 18 further recites "determining whether the call request is for a call of the selected call-type prior to said operation of selectably routing." Like claim 1, the "selectably" qualifier of claim 18 does not refer to a *separate*, *unrecited* decision, as Microsoft argues. Rather, it simply reflects that the routing operation is not performed unless it is at least determined that "the call request is for a call of the selected call-type."

This plain reading of the claim language does not render superfluous the "determines" and "determining" limitations of claims 1 and 18 (respectively). *Cf.* Dkt. 47, 12 ("WSOU's position impermissibly renders the word "selectably" superfluous[.]"). On the contrary, it gives meaningful effect to the "determines" / "determining" limitations and recognizes that it is *because* of those limitations that the routing operation is recited in the context of a "selectably" qualifier.

### 7. Microsoft fails to prove indefiniteness of dependent claim 12 by clear and convincing evidence

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning; not indefinite. | Indefinite |

Claim 12 is presumptively definite. Microsoft has failed to prove indefiniteness of dependent claim 12 by clear and convincing evidence merely by offering attorney argument, *without the support of any expert testimony*. Because Microsoft's "garden-variety theory of indefiniteness 'requires a determination whether those skilled in the art would understand what is claimed,' *Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1344 (Fed. Cir. 2010) (citation omitted), the Court [should] conclude[] that expert testimony is necessary" here to meet the exacting burden of proof. *Lecat's Ventriloscope v. MT Tool & Mfg.*, 351 F. Supp. 3d 1100, 1114 (N.D. Ill. 2018); *see also Whirlpool Corp. v. Ozcan*, No. 2:15-CV-2103-JRG, 2016 WL 7474517, at *3 (E.D. Tex. Dec. 29, 2016) (rejecting indefiniteness contention and noting that the accused infringer only provided attorney arguments to support its position, and no expert testimony). Claim 12 is reproduced below for ease of reference:

> The apparatus of claim 1 wherein the communication system further comprises
> a local-network alternate station, wherein said emergency call muter is further
> for determining whether the call of the selected call-type shall be completable
> by way of the normal-operation communication link and for rerouting a call
> request to the local-network alternate station upon determination that the call
> completion by way of the normal-operation communication link.

'868 patent, 11:22−29 (claim 12).

In providing mere speculation as to the perspective of a person of ordinary skill in the art, Microsoft's counsel first feigns ignorance concerning the criterion upon which the claimed determination is made. Dkt. 47, 14. But claim 12 is agnostic as to ***how*** its claimed "determining" is performed, and it is the purview of the specification, not the claims, to provide a description for how an invention may be implemented according to example embodiments. A plain reading of claim 12 reveals that the "determining" is recited with reasonable certainty in terms of ***what*** is being determined—i.e., "whether the call of the selected call-type shall be completable by way of the normal-operation communication link."

Microsoft then raises the attorney argument that claim 12 lacks reasonable certainty as to ***how*** the "rerouting" limitation is tied to the "determining" limitation. *Id*., 14−15. The attorney argument that "rerouting" is not expressly tied to a particular *outcome* of the "determining" does not prove indefiniteness. It is sufficient here that the claimed "rerouting" is based upon the antecedent determination, regardless of whether the outcome is affirmative or negative.

If the Court is inclined to find that construction of claim 12 would be helpful, the scope and meaning would not be changed by restating the antecedent reference as follows: "[t]he apparatus of claim 1 wherein the communication system further comprises a local-network alternate station, wherein said emergency call muter is further for determining whether the call of the selected call-type shall be completable by way of the normal-operation communication link and for rerouting a call request to the local-network alternate station ==based== upon ==the== determination ~~that~~ ==of whether the call of the selected call-type shall be completable~~ ~~the call completion~~ by way of the normal-operation communication link." WSOU proposes this in the alternative.

**II.     U.S. Patent No. 7,676,550 ( Case No. 6:20-cv-00456)  Disputed Claim Terms**

     **A.     Terms with the word "means"**

For each of the disputed terms including the word "means," the parties dispute whether the rebuttable presumption that § 112 ¶ 6 applies has been overcome. For each "means" term identified by Defendant, the corresponding structure is recited in the preamble of claim 1 itself, and thus the rebuttable presumption is overcome, specifically *the recited structure within the claims themselves* is: **multiple access presence agent with presence server**. '550 patent, 8:30-31. *TriMed, Inc. v. Stryker Corp.*, 514 F.3d 1256, (Fed. Cir. 2008) ("Sufficient structure exists when the claim language specifies the exact structure that performs the functions in question without need to resort to other portions of the specification or extrinsic evidence for an adequate understanding of the structure."); *TecSec, Inc. v. Int'l Bus. Machs. Corp.*, 731 F.3d 1336, 1347 (Fed. Cir. 2013) (To determine whether a claim recites sufficient structure, "it is sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures and even if the term identifies the structures by their function."). And in fact, while almost all of Defendant's proposed structures for these terms improperly seeks to include more structure than required, in each case Defendant also identifies a [multiple access] presence agent and presence server, *which is recited in the claim language itself*. And as the specification itself recites:

> "The presence server 160 is a physical entity that can operate as either the PA 150 or as a proxy server for routing requests from watchers 170 to the PA 150. The presence server 160 stores the presence information 180 for a plurality of presentities 110. Thus, the PA 150, in combination with the presence server 160, is operable to receive presence information of the presentity 110 from the PUAS 140, receive requests from watchers 170 for the presence information and provide the presence information to the watcher(s) 170."

'550 patent, 4:33-41. In other words, the multiple access presence agent with presence server performs all of the recited functions. In the exemplary embodiments of the specification, it is disclosed that the multiple access presence agent and presence server performs each of the recited

functions. *See e.g.*, *Id.*, 1:56-2:6, 2:7-20, 2:21-26, 5:48-61, 5:62-6:11, 6:12-23, 6:24-31, 6:32-43, 6:44-57.

Regardless, even if these claim terms are subject to 112 ¶ 6, Defendant's proposed constructions should be rejected at least because: (i) Defendant misidentifies the alleged means-plus-function term; (ii) Defendant misidentifies the recited function; and (iii) Defendant improperly seeks to include more structure than is required. Finally, Defendant also proposes each of its proposed terms are indefinite for failure to disclose an algorithm. Defendant is wrong for at least two reasons. Defendant is wrong because neither the claims or Defendant's own (improper) proposed structures recite a general-purpose computer or processor. *See Nevro Corp. v. Boston Scientific Corporation*, 955 F.3d 35, 42-43 (Fed. Cir. 2020) (no requirement for a specific algorithm when the identified structure is not a general-purpose computer or processor).

For example, while the specification discloses that the presence _user_ agents (PUAs) are software programs that can run on any device, terminal, or any combination of generic hardware and software (*see Id.*, 3:41-58), that is not the case for the presence server and presence agent (PA). Instead, the presence server is described as a "physical entity" (*Id.*, 4:33-35) and, along with the presence agent, performs each of the recited functions in the exemplary embodiments. In other words, the presence server is a special purpose "physical entity" that along with the multiple access present agent, operates to specifically perform the recited functions. While WSOU disagrees that disclosure of an algorithm is required, to the extent disclosure of any algorithms are necessary, the claims are not indefinite because the specification and claims disclose such algorithms.

> **8.** **means for defining access rules for each of said presence contributors, said access rules associated with each of said presence contributors defining respective rights and privileges of said presence contributors to access said presence information of said presentity after said presence contributors have provided said presence information to said presence server**

As an initial matter, this term is not subject to 35 U.S.C. § 112 ¶ 6 for the reasons discussed above in Section II.A. Regardless, Defendant misidentifies the alleged means-plus-function term by over-including claim language. Defendant argues that not including claim language that is not

part of the recited function would "thereby write it out for claim construction purposes of assessing infringement…" Resp. Br. at 19-20. None of that is true; the claim language does not magically disappear. WSOU simply disagrees that the "said access rules…" portion of the language recites function. Because it does not, the "said access rules…" portion merely provides requirements as to the access rules once they are defined. If this term were subject to 35 U.S.C. § 112 ¶ 6 (and it is not), the correct recited function here is "defining access rules for each of said presence contributors." Defendant further compounds its error by misidentifying the recited function to similarly over-include claim language that does not recite function. Defendant's proposed construction should further be rejected because it recites structure that is unnecessary to perform the recited function. Defendant's proposal to include "presentity 110" is unnecessary to perform the function of "defining access rules for each of said presence contributors." For example, the specification describes that "each multiple access presence agent 150a and 150b is capable of defining access rules 210 for each of the presence contributors 120." '550 patent, 5:50-52. Defendant's citations to the specification only show that the presentity provides input to the multiple access presence agent, the presentity does not perform the recited function. Regardless, as already shown the multiple access presence agent is all that is necessary. *See Acromed Corp. v. Sofamor Danek Group*, 253 F.3d 1371, 1382 (Fed. Cir. 2001) ("a court may not import into the claim structural limitations from the written description that are unnecessary to perform the claimed function.").

Finally, Defendant is wrong that this term is indefinite for failure to disclose an algorithm. First, Defendant is wrong because neither the claims or Defendant's own (improper) proposed structure recite a general-purpose computer or processor. *See Nevro Corp.,* 955 F.3d at 42-43  (no requirement for a specific algorithm when the identified structure is not a general-purpose computer or processor). Second, to the extent disclosure of the algorithm is deemed to be necessary, the specification, as well as the claim itself, discloses **the corresponding algorithm**: "define respective rights and privileges of presence contributors to access the presence information of a presentity." *See* '550 patent, 1:60-63, 5:62-6:1, 6:65-7:3, 7:38-41, 7:65-8:5, 8:36-39, Figs. 3,

4. Despite Defendant's own admission that the cited portions of the specification provide "descriptions of what an access rule may be" (Resp. Br. at 21), Defendant argues that none of it is "textual … or other description" of an algorithm. *Id.* The Federal Circuit instructs that the algorithm can be expressed "in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure." *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1312 (Fed. Cir. 2012). By providing a description of what the access rules may be, the specification describes how to define the access rules. Additionally, Defendant has failed to meet its burden. It is Defendant's burden to prove its contention of indefiniteness by clear and convincing evidence. *Sonix Tech. Co. v. Publ'ns Int'l, Ltd*., 844 F.3d 1370, 1377 (Fed. Cir. 2017). In *Typhoon Touch Techs., Inc. v. Dell, Inc*., 659 F.3d 1376, 1384-86 (Fed. Cir. 2011), the Federal Circuit reversed summary judgment that a means-plus-function limitation was invalid for failing to disclose corresponding structure of an algorithm where the Federal Circuit found that there was no evidence that a programmer of ordinary skill would not be able to program the algorithm based on the textual description. *Id.* Defendant has not shown that a person of skill in the art would not be able to provide an operative software program for the specified function. *Id.* (holding that to satisfy the disclosure requirement of the statute, "the patent need only disclose sufficient structure for a person of skill in the field to provide an operative software program for the specified function").

> **9. means for authenticating one of said presence contributors to determine said access rules associated with said one of said presence contributors**

As an initial matter, this term is not subject to 35 U.S.C. § 112 ¶ 6 for the reasons discussed above in Section II.A. The only disagreement (in addition to whether the term is subject to 35 U.S.C. § 112 ¶ 6 at all) appears to be whether disclosure of an algorithm is required. It is not. In any case, first, Defendant is wrong because neither the claims nor Defendant's own proposed structure recite a general-purpose computer or processor. Second, to the extent disclosure of the algorithm is deemed to be necessary, the specification discloses **the corresponding algorithm**: "determine if said presence contributor is authenticated based on provided authentication

credentials." *See* '550 patent, 1:32-34, 2:21-26, 6:44-53, 7:4-12, 7:42-47, 8:5-22, Fig. 5. These descriptions show how the recited authenticating is performed. For example, at the outset, the specification discloses that "access to presence agents is secured, typically by user name and password." '550 patent, 1:32-33. This discloses the standard operation of determining if there is a match to a provided username and password combination. Then, the specification provides further examples of authentication credentials that can similarly be authenticated like a username password combination. *See e.g.*, 2:21-26, 6:44-53. This is further confirmed where the specification discloses that "presence contributor A *provides* its authentication credentials *to the presence agent* 150 to authenticate presence contributor A." *Id.*, 7:4-12; *see also* 7:42-47. The specification also discloses that there is no authentication if the provided authentication credentials are incorrect. 8:5-22. As the specification teaches, as with typical username password combinations, authentication is performed by determining if the provided authentication credentials are correct (i.e. a match) or incorrect; *see also Typhoon Touch*, 659 F.3d at 1384-86 (holding that to satisfy the disclosure requirement of the statute, "the patent need only disclose sufficient structure for a person of skill in the field to provide an operative software program for the specified function").

> **10.** **means for enabling access to said presence information of said presently by said one of said presence contributors based on said access rules associated with said one of said presence contributors**

As an initial matter, this term is not subject to 35 U.S.C. § 112 ¶ 6 for the reasons discussed above in Section II.A. If this term were subject to 35 U.S.C. § 112 ¶ 6 (and it is not), Defendant's proposed construction should further be rejected because it recites structure that is unnecessary to perform the recited function. Defendant's proposal to include "presence user agent 140, and communications network 130" is unnecessary to perform the recited function. For example, the specification describes that the presence agent grants a presence contributor A with the rights and privileges associated with the access rules for presence contributor A, which may include the ability to view, set, and/or change presence information about the presently. '550 patent, 7:13-30. The communications network and presence user agent are, at best, both inputs to the recited

function but are in fact not required at all. There is no requirement that there be a communication network for "enabling access to said presence information…"; in fact, Figure 2 shows that the presence server is its own "physical entity" and can be directly interfaced with by contributors 120. A presence user agent plays no part in the "enabling access to said presence information…" where the presence information is stored and maintained in the presence server. *See Id.*, Fig. 2.

Finally, Defendant is wrong that this term indefinite for failure to disclose an algorithm. First, Defendant is wrong because neither the claims or Defendant's own (improper) proposed structure recite a general-purpose computer or processor. Second, to the extent disclosure of the algorithm is deemed to be necessary, the specification, as well as the claim itself, discloses **the corresponding algorithm**: "determine access rules for said one of said presence contributors and granting said one of said presence contributors the rights and privileges associated with said access rules." *See* '550 patent, 1:63-2:2, 7:9-30, 7:61-8:7, 8:8-22, Figs. 3, 5. As the specification discloses in an exemplary embodiment, after authentication, the presence agent determines the appropriate access rules and, based on those access rules, grants the rights and privileges associated with the access rules, where the rights and privileges may vary from user to user. *See e.g. Id.*, 7:9-30, 7:61-8:7; *see also Typhoon Touch*, 659 F.3d at 1384-86 (holding that to satisfy the disclosure requirement of the statute, "the patent need only disclose sufficient structure for a person of skill in the field to provide an operative software program for the specified function").

> 11. **means for enabling access further includes means for filtering said presence information of said presentity based on said access rules of said one of said presence contributors to produce filtered presence information and means for providing said filtered presence information to said one of said presence contributors**

As an initial matter, this term is not subject to 35 U.S.C. § 112 ¶ 6 for the reasons discussed above in Section II.A. Regardless, Defendant misidentifies the alleged means-plus-function term by over-including claim language. Further, if this term were subject to 35 U.S.C. § 112 ¶ 6 (and it is not), and if this term was further evaluated as two separate terms (which Defendant did not propose and does not specify), then the identified functions proposed by Defendant are addressed

separately: For the alleged function "filtering said presence information of said presentity based on said access rules of said one of said presence contributors to produce filtered presence information," Defendant's proposed construction should further be rejected because it recites structure that is unnecessary to perform the recited function. Defendant's proposal to include "access rules 210" is unnecessary to perform the recited function. Here, the access rules are expressly recited in the proposed function itself, and furthermore, as the specification describes, while the access rules are an input in performing the filtering, the actual performance of filtering is accomplished by the multiple access presence agent. *See* '550 patent, 5:48-6:11. Defendant also proposes the proposed function/"term" is indefinite for failure to disclose an algorithm. Defendant is wrong for at least two reasons. First, Defendant is wrong because neither the claims or Defendant's own (improper) proposed structure recite a general-purpose computer or processor. Second, to the extent disclosure of the algorithm is deemed to be necessary, the specification, as well as the claim itself, discloses **the corresponding algorithm**: "select some or all of said presentity's presence information to allow said one of said presence contributor to access or view." *See* '550 patent, 4:44-55, 5:48-6:11, 7:48-54, 8:1-4, Figs. 4, 5. As the specification teaches in an exemplary embodiment, the access rules may include filters that operate to only allow a portion of the presence information to be provided to a presence contributor, such as in the case where access rule A may allow an assistant to have access/view to professional contacts of a manager but not the personal contacts on the manager's buddy list. *See e.g.*, *Id.*, 5:48-6:11; *see also Typhoon Touch*, 659 F.3d at 1384-86 (holding that to satisfy the disclosure requirement of the statute, "the patent need only disclose sufficient structure for a person of skill in the field to provide an operative software program for the specified function").

Next, for the alleged function, "providing said filtered presence information to said one of said presence contributors," Defendant's proposed construction should further be rejected because it recites structure that is unnecessary to perform the recited function. Defendant's proposal to include "presence user agent 140, and communications network 130 or 135" is unnecessary to perform the recited function. For example, the specification describes that the multiple access

17

presence agent may have access rules that cause presence contributor A to only access/view some or all of a presentity's presence information. '550 patent, 5:48-6:11. Furthermore, as shown in Figure 2, presence contributors may have direct access to the presence server (a "physical entity") with presence agents. While it may or may not be the case that the present user agent is the one *provided with* the filtered presence information, the presence user agent has no role in performing the recited function. Defendant also asserts the claim language is indefinite ostensibly because there is no disclosure of a corresponding algorithm. Defendant is wrong for at least two reasons. First, neither the claims nor Defendant's own (improper) proposed structure recite a general-purpose computer or processor. Second, to the extent disclosure of the algorithm is deemed to be necessary, the specification, as well as the claim itself, discloses **the corresponding algorithm**: "allow said one of said presence contributor to access or view the selected some or all of said presentity's presence information." *See* '550 patent, 4:44-55, 5:48-6:11, 7:48-54, 8:1-4, Figs. 4, 5. As the specification teaches in an exemplary embodiment, the access rules may include filters that operate to only allow a portion of the presence information to be provided to a presence contributor, such as in the case where access rule A may allow an assistant to have **access/view** to professional contacts of a manager but not the personal contacts on the manager's buddy list. *See e.g., Id.,* 5:48-6:11; *see also Typhoon Touch*, 659 F.3d at 1384-86 (holding that to satisfy the disclosure requirement of the statute, "the patent need only disclose sufficient structure for a person of skill in the field to provide an operative software program for the specified function").

> **12. means for enabling access further includes means for enabling said one of said presence contributors to update said presence information of said presentity based on said access rules of said one of said presence contributors**

As an initial matter, this term is not subject to 35 U.S.C. § 112 ¶ 6 for the reasons discussed above in Section II.A. Also, Defendant misidentifies the alleged means-plus-function term by over-including claim language. If this term were subject to 35 U.S.C. § 112 ¶ 6 (and it is not), Defendant's proposed construction should further be rejected because it recites structure that is unnecessary to perform the recited function. Defendant's proposal to include "presence

contributors 120, access rules 210, presence user agent 140, and communications network 130" is unnecessary to perform the recited function. For example, the specification describes that in order to restrict access to the presence information managed by multiple presence agents, access rules may be created to define the scope and/or ability of a presence contributor to set/change the presence information of a presentity. '550 patent, 5:48-6:22; *see also id.*, 8:18-22. Only the multiple access presence agent and presence server are necessary to perform the recited function. The access rules are only an input to performing the recited function and do not perform the recited function, the presence contributors only provide further inputs and do not perform the recited function, and the rest of Defendant's extraneous proposal, presence user agent and communications network, have no role in the performance of the recited function. As shown in Figure 2, the contributors may have direct access to the presence server, and while the presence user agent may or may not be requesting to update, it has no role in performing "enabling said one of said presence contributors to update said presence information…"

Finally, Defendant is wrong that this term is indefinite for failure to disclose an algorithm. First, Defendant is wrong because neither the claims or Defendant's own (improper) proposed structure recite a general-purpose computer or processor. Second, to the extent disclosure of the algorithm is deemed to be necessary, the specification, as well as the claim itself, discloses **the corresponding algorithm**: "providing one of said presence contributors the ability to set/change the presence information of said presentity subject to any limits on the ability according to said access rules." *See* '550 patent, 5:48-6:1, 6:12-22, 7:13-30, 7:54-60, 7:65-8:4. In an exemplary embodiment, the specification teaches to restrict access to presence information, the multiple access presence agents are capable of defining access rules for each of presence contributors A-E, the access rules defining the respective rights and privileges of the presence contributors. Using those access rules for each corresponding presence contributor, the multiple access presence agent may put limits on certain presence contributor's ability to update presence information of a presentity, allowing the control of only certain elements of the presence state but not others. For example, housekeeping personnel may be able to update whether a room has been cleaned but

cannot make changes to a guest bill. *See e.g.*, *Id.*, 5:48-6:1, 6:12-22; *see also Typhoon Touch*, 659 F.3d at 1384-86 (holding that to satisfy the disclosure requirement of the statute, "the patent need only disclose sufficient structure for a person of skill in the field to provide an operative software program for the specified function").

> **13.** **means for enabling access further includes means for enabling said one of said presence contributors to define preference information associated with said presence information of said presentity based on said access rules of said one of said presence contributors**

As an initial matter, this term is not subject to 35 U.S.C. § 112 ¶ 6 for the reasons discussed above in Section II.A. Defendant misidentifies the alleged means-plus-function term by over-including claim language. Regardless, here, the parties agree on the recited function but disagree on the corresponding structure. If this term were subject to 35 U.S.C. § 112 ¶ 6 (and it is not), Defendant's proposed construction should further be rejected because it recites structure that is unnecessary to perform the recited function. Defendant's proposal to include "access rule 210, presence user agent 140, and communications network 130" is unnecessary to perform the recited function. For example, the specification describes that in order to restrict access to the presence information managed by multiple presence agents, access rules may be created to define the scope and/or ability of a presence contributor to set/change the preference information of a presentity. '550 patent, 5:48-52, 6:23-31; *see also id.*, 8:18-22. Only the multiple access presence agent and presence server are necessary to perform the recited function. The access rules are only an input to performing the recited function and do not perform the recited function (and are specifically recited in the claim language as inputs), and the presence user agent and communications network have no role in the performance of the recited function. As shown in Figure 2, the contributors may have direct access to the presence server, and while the presence user agent may or may not be requesting to define presence information, it has no role in performing "enabling said one of said presence contributors to define presence information…"

Finally, Defendant is wrong that this term is indefinite for failure to disclose an algorithm. First, Defendant is wrong because neither the claims or Defendant's own (improper) proposed

structure recite a general-purpose computer or processor. Second, to the extent disclosure of the algorithm is deemed to be necessary, the specification, as well as the claim itself, discloses **the corresponding algorithm**: "providing one of said presence contributors the ability to set/change the preference information of said presentity subject to any limits on the ability according to said access rules." *See* '550 patent, 5:48-52, 6:23-31; *see also id.*, 8:18-22. In an exemplary embodiment, the specification teaches to restrict access to presence information, the multiple access presence agents are capable of defining access rules for each of presence contributors A-E, the access rules defining the respective rights and privileges of the presence contributors. Using those access rules for each corresponding presence contributor, the multiple access presence agent may allow or restrict the ability of a presence contributor to set/change the preference information for a presentity, such as an access rule that prevents a presence contributor from limiting the provided presence information to other watchers. *See e.g.*, *Id.*, 5:48-52, 6:23-31; s*ee also Typhoon Touch*, 659 F.3d at 1384-86 (holding that to satisfy the disclosure requirement of the statute, "the patent need only disclose sufficient structure for a person of skill in the field to provide an operative software program for the specified function").

> 14. **means for authenticating further includes means for assigning authentication credentials to each of said presence contributors and means for receiving said authentication credentials of said one of said presence contributors to authenticate said one of said presence contributors**

As an initial matter, this term is not subject to 35 U.S.C. § 112 ¶ 6 for the reasons discussed above in Section II.A. Regardless, Defendant misidentifies the alleged means-plus-function term by over-including claim language. Regardless, if this term were subject to 35 U.S.C. § 112 ¶ 6 (and it is not), and if this term was further evaluated as two separate terms (which Defendant did not propose and does not specify), then the identified functions proposed by Defendant is addressed separately below: For the alleged function "assigning authentication credentials to each of said presence contributors," Defendant's proposed construction should further be rejected because it recites structure that is unnecessary to perform the recited function. Defendant's

proposal to include "presentity 110" is unnecessary to perform the recited function. Here, the presentity is not involved in any way with the authentication credentials of the presence contributors. Additionally, as the specification discusses, the authentication credentials for each presence contributor are assigned by the presence agent and provided to the presence contributors and maintained by the presence agent for later use in authenticating the presence contributors. *See* '550 patent, 6:54-57. Defendant also proposes the proposed function/"term" is indefinite for failure to disclose an algorithm. Defendant is wrong for at least two reasons. First, Defendant is wrong because neither the claims nor Defendant's own (improper) proposed structure recite a general-purpose computer or processor. Second, to the extent disclosure of the algorithm is deemed to be necessary, the specification, as well as the claim itself, discloses **the corresponding algorithm**: "<u>associating authentication credentials with each of said presence contributors.</u>" *See* '550 patent, 2:21-26, 6:44-57, 7:4-12, 7:42-47, 8:5-22, Fig. 5. For example, the specification discloses that "presence contributor A *provides* its authentication credentials *to the presence agent* 150 to authenticate presence contributor A." *Id.*, 7:4-12; *see also* 7:42-47. As the specification teaches, as with typical username password combinations, authentication credentials are associated with each of the presence contributors. *See Typhoon Touch*, 659 F.3d at 1384-86 (holding that to satisfy the disclosure requirement of the statute, "the patent need only disclose sufficient structure for a person of skill in the field to provide an operative software program for the specified function").

Next, for the alleged function, "receiving said authentication credentials of said one of said presence contributors to authenticate said one of said presence contributors," Defendant's proposed construction should further be rejected because it recites structure that is unnecessary to perform the recited function. As discussed in Section III.A, above, **the correct corresponding structure is**: "<u>multiple access presence agent with presence server, and equivalents thereof.</u>" *See* '550 patent, 1:32-34, 2:21-26, 6:44-57, 7:4-12, 7:42-47, 8:5-22, Fig. 5. Defendant's proposal to include "presence contributors 120, presence user agent 140, and communications network 130 or 135" is unnecessary to perform the recited function. The presence contributors only provide an input into the function, and presence user agent, and communications network are not involved in

performing the function of "receiving said authentication credentials…". As the specification discusses, "the authentication credentials of one of the presence contributors are received at the multiple presence agent." *See* '550 patent, 8:8-10. And as shown in Figure 2, the contributors may have direct access to the presence server. Defendant also objects that the term is indefinite allegedly because the specification fails to disclose an algorithm. Defendant is wrong for at least two reasons. First, neither the claims nor Defendant's own (improper) proposed structure recite a general-purpose computer or processor. Second, the court need not search for a disclosed algorithm here because the claim language recites sufficient structure—i.e., "multiple access presence agent with presence server, and equivalents thereof." In the Federal Circuit's decision in *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303 (Fed. Cir. 2011), the Federal Circuit states that "[a]bsent a possible narrower construction of the terms "processing," "**receiving**," and "storing," discussed below, those functions can be achieved by any general purpose computer without special programming. As such, it [is] not necessary to disclose more structure than the general purpose processor that performs those functions." *In re Katz*, 639 F.3d 1316 (emphasis added). Regardless, to the extent an algorithm is found to be required due to the "to authenticate…" claim language, that algorithm is nonetheless disclosed as described in the "means for authenticating…" term in Section II.A.9, above.

> 15.    **means for enabling further includes means for enabling access to said presence information of said presentity by multiple ones of said presence contributors simultaneously based on said respective access rules associated with said multiple ones of said presence contributors**

As an initial matter, this term is not subject to 35 U.S.C. § 112 ¶ 6 for the reasons discussed above in Section II.A. Also, Defendant misidentifies the alleged means-plus-function term by over-including claim language. Regardless, here, the parties agree on the recited function but disagree on the corresponding structure. If this term were subject to 35 U.S.C. § 112 ¶ 6 (and it is not), Defendant's proposed construction should further be rejected because it recites structure that is unnecessary to perform the recited function. Defendant's proposal to include "presence user agents 140, and communications network 130" is unnecessary to perform the recited function. For

example, the specification describes that the multiple access presence agent may be accessed by multiple presence contributors ('550 patent 5:24-27), and based on the respective access rules for each of the multiple presence contributors, the multiple presence contributors may simultaneously access the presence information of the presentity, each having different rights and privileges. '550 patent 6:32-43; *see also id.*, 7:12-30. Only the multiple access presence agent and presence server are necessary to perform the recited function. The presence user agent and communications network have no role in the performance of the recited function. As shown in Figure 2, the contributors may have direct access to the presence server, and while the presence user agent may or may not be requesting access, it has no role in performing "enabling access to said presence information of said presentity …".

Finally, Defendant is wrong that this term is indefinite for failure to disclose an algorithm. First, Defendant is wrong because neither the claims nor Defendant's own (improper) proposed structure recite a general-purpose computer or processor. Second, to the extent disclosure of the algorithm is deemed to be necessary, the specification, as well as the claim itself, discloses **the corresponding algorithm**: "provide access by multiple ones of said presence contributors simultaneously to said presence information of said presentity, each of said presence contributors possibly having different rights and privileges to said presence information based on said respective access rules." *See* '550 patent, 5:48-52, 6:23-43; *see also id.*, 8:18-22. In an exemplary embodiment, the specification teaches to restrict access to presence information, the multiple access presence agents are capable of defining access rules for each of presence contributors A-E, the access rules defining the respective rights and privileges of the presence contributors, including access priority. Using that access priority, the multiple access presence agent may enable multiple presence contributors to simultaneously access the presence information, such that one contributor is denied access while another contributor is accessing the presence information. *See e.g.*, *Id.*, 5:48-52, 6:23-43; s*ee also Typhoon Touch*, 659 F.3d at 1384-86 (holding that to satisfy the disclosure requirement of the statute, "the patent need only disclose sufficient structure for a person of skill in the field to provide an operative software program for the specified function").

B. **Other disputed terms (without the word "means")**

    16. **presentity / presentities**

    17. **presence contributors**

Defendant groups together these terms in its Responsive Brief. Resp. Br. at 40-41. Defendant does so to purportedly to "illuminate[] the different roles." *Id.* First, the specification itself does a more than sufficient job of "illuminating" the different roles, and nothing in Defendant's Responsive Brief shows otherwise. It appears Defendant takes issue with the fact that the specification expressly teaches that a presentity can also provide its own presence information. For example, the specification teaches "presentity 110 provides presence information indicating the presentity's presence state to presence system 100." '550 patent, 3:1-4. Also, the claim language itself expressly recites, "enabling said one of said presence contributors to update said presence information of said presentity." *See e.g.* '550 patent, claim 11, 10:31-34; *see also Id.*, 1:56-58 (presence information is provided by presence contributors). While the specification describes in detail the interactions of the presence contributors with the multiple access presence agent, nonetheless, as specifically and expressly taught by the specification, "presentity 110 provides presence information indicating the presentity presence state to the preference system 100." *Id.*, 3:1-4. This term does not require any construction because a person of ordinary skill in the art would readily understand the term and its role in the claimed invention, especially upon review of the specification.

Dated: February 11, 2021

Respectfully submitted,

By: _/s/ James L. Etheridge_
James L. Etheridge
Texas Bar No. 24059147
Ryan S. Loveless
Texas Bar No. 24036997
Brett A. Mangrum
Texas Bar No. 24065671
Travis L. Richins
Texas Bar No. 24061296
Jeffrey Huang
Etheridge Law Group, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, TX 76092
Tel.: (817) 470-7249
Fax: (817) 887-5950
Jim@EtheridgeLaw.com
Ryan@EtheridgeLaw.com
Brett@EtheridgeLaw.com
Travis@EtheridgeLaw.com
Jhuang@EtheridgeLaw.com

Mark D. Siegmund
State Bar No. 24117055
mark@waltfairpllc.com
Law Firm of Walt, Fair PLLC.
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432

_Counsel for Plaintiff WSOU Investments, LLC_

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing instrument was served or delivered electronically via U.S. District Court [LIVE]- Document Filing System, to all counsel of record, on February 11, 2021.

_/s/ James L. Etheridge_
James L. Etheridge